SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No.  CR-06-0385-PR |
| Appellee, | ) | |
| | ) | Court of Appeals |
| | ) | Division Two |
| v. | ) | No.  2 CA-CR 00-0430 |
| | ) | |
| | ) | Pima County |
| RODNEY JOSEPH GANT, | ) | Superior Court |
| | ) | No.  CR-20000042 |
| Appellant. | ) | |
| | ) | **O P I N I O N** |

Appeal from the Superior Court in Pima County
The Honorable Barbara C. Sattler, Judge Pro Tempore

**REVERSED**

_____

Opinion of the Court of Appeals, Division Two
213 Ariz. 446, 143 P.3d 379 (2006)

**JUDGMENT AFFIRMED; OPINION VACATED**

_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
     By   Randall M. Howe, Chief Counsel,
          Criminal Appeals Section
          Eric J. Olsson, Assistant Attorney General      Tucson
Attorneys for State of Arizona

LAW OFFICES OF THOMAS JACOBS                                Tucson
     By   Thomas F. Jacobs
Attorneys for Rodney Joseph Gant

MICHAEL E. MCNEFF                                              Chandler
      By   Michael E. McNeff

And

ERIC B. EDWARDS                                                Phoenix
      By   Eric B. Edwards
Attorneys for Amici Curiae
Arizona Law Enforcement Legal Advisors' Association
and Arizona Association of Chiefs of Police

MICHAEL G. RANKIN, TUCSON CITY ATTORNEY                        Tucson
      By   Baird S. Greene, Principal Assistant
           City Attorney
           Lisa A. Judge, Principal Assistant
           City Attorney
Attorneys for Amicus Curiae City of Tucson
_____

**B E R C H**, Vice Chief Justice

¶1      This case requires us to determine whether the search incident to arrest exception to the Fourth Amendment's warrant requirement permits the warrantless search of an arrestee's car when the scene is secure and the arrestee is handcuffed, seated in the back of a patrol car, and under the supervision of a police officer.   We hold that in such circumstances, a warrantless search is not justified.

## I.   FACTS AND PROCEDURAL BACKGROUND

¶2      On August 25, 1999, two uniformed Tucson police officers went to a house after receiving a tip of narcotics activity there.   When Defendant Rodney Gant answered the door, the officers asked to speak with the owner of the residence. Gant informed the officers that the owner was not home, but

- 2 -

would return later that afternoon. After leaving the residence, the officers ran a records check and discovered that Gant had a suspended driver's license and an outstanding warrant for driving with a suspended license.

¶3        The officers returned to the house later that evening. While they were there, Gant drove up and parked his car in the driveway. As he got out of his car, an officer summoned him. Gant walked eight to twelve feet toward the officer, who immediately arrested and handcuffed him. Within minutes, Gant had been locked in the back of a patrol car, where he remained under the supervision of an officer. At least four officers were at the residence by this time and the scene was secure. Two other arrestees had already been handcuffed and locked in the back of separate patrol cars and there were no other people around.

¶4        After Gant had been locked in the patrol car, two officers searched the passenger compartment of his car and found a weapon and a plastic baggie containing cocaine. Gant was charged with one count of possession of a narcotic drug for sale and one count of possession of drug paraphernalia for the baggie that held the drug.

¶5        Gant filed a motion to suppress the evidence seized from his car, which the superior court denied. Gant was convicted of both charges and appealed. The court of appeals

held that the evidence should have been suppressed and therefore reversed Gant's convictions. *State v. Gant*, 202 Ariz. 240, 246, ¶ 18, 43 P.3d 188, 194 (App. 2002). After this Court denied review, the State petitioned the United States Supreme Court for certiorari. The Supreme Court granted the petition, vacated the court of appeals' opinion, and remanded to that court to reconsider its opinion in light of this Court's opinion in *State v. Dean*, 206 Ariz. 158, 76 P.3d 429 (2003). *Arizona v. Gant*, 540 U.S. 963 (2003). In *Dean*, we held that when an arrestee is not a recent occupant of his vehicle at the time of the arrest, the reasons supporting a "warrantless search of the vehicle – protection of the arresting officers and preservation of evidence" – no longer justify the search and therefore the police must obtain a warrant. 206 Ariz. at 166, ¶¶ 32–34, 76 P.3d at 437.

¶6      Following the Supreme Court's remand, the court of appeals remanded Gant's case to the trial court to determine whether Gant was a recent occupant of his car when he was arrested. After an evidentiary hearing, the superior court determined that Gant was a recent occupant and concluded that the search of his car was thus justified as incident to his arrest. Gant appealed and the court of appeals again reversed, finding that the search of Gant's car was not incident to his arrest because it was not contemporaneous with his arrest and

- 4 -

did not satisfy the rationales set forth in *Chimel v. California*, 395 U.S. 752 (1969), for dispensing with the warrant requirement. *State v. Gant*, 213 Ariz. 446, 452, ¶ 18, 143 P.3d 379, 385 (App. 2006).

¶7     The State petitioned for review, which we granted because this case presents an important question regarding vehicle searches incident to arrest. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") section 13-4032(3) (2001), and Arizona Rule of Criminal Procedure 31.19.

## II.  DISCUSSION

¶8     The Fourth Amendment guarantees the right of citizens to be free from unreasonable governmental searches. U.S. Const. amend. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968).[1] "[S]ubject only to a few specifically established and well-delineated exceptions," a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967).

¶9     The Supreme Court has recognized a "search incident to a lawful arrest" as one of the exceptions to the Fourth

---

[1]    Gant does not claim a violation of the Arizona Constitution.  We therefore consider only whether the search violated the Fourth Amendment.

Amendment's warrant requirement.  *See, e.g.*, *Chimel*, 395 U.S. at 755.  The Court justified the search incident to arrest exception by the need to protect officers and preserve evidence:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.  In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.  And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.  A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested.

*Id.* at 762-63.  Based on the rationales of officer safety and preservation of evidence, the Court limited the permissible scope of a search incident to arrest to the "arrestee's person and the area 'within his immediate control'" – that is, "the area from within which he might gain possession of a weapon or destructible evidence."  *Id.* at 763.

¶10     Although the rule has worked reasonably well in some contexts, it has proved difficult to apply to automobile searches incident to arrest, prompting the Supreme Court to reconsider and redefine the permissible scope of such a search. *See New York v. Belton*, 453 U.S. 454, 455 (1981).  In *Belton*, a police officer stopped a speeding vehicle and made contact with

the driver and three passengers while all occupants were seated in the vehicle. *Id.* at 455-56. Upon smelling marijuana, the officer ordered the occupants out of the car, arrested them, and searched each one. *Id.* at 456. As the driver and passengers stood by, the officer searched the car's passenger compartment and found a jacket containing cocaine. *Id.*

¶11    The sole question before the Court in *Belton* was the "constitutionally permissible scope" of an otherwise lawful search of an automobile incident to arrest, given the exigencies of the arrest situation. *Id.* at 455, 457; *see also Thornton v. United States*, 541 U.S. 615, 619 (2004) (describing *Belton* as deciding "the constitutionally permissible scope of a search" incident to arrest). Noting the lack of consistency among courts in deciding how much of the automobile the police could search incident to arrest and the desirability of a bright-line rule to guide police officers in the conduct of their duties, the Supreme Court held that the area within an arrestee's immediate control encompassed not only "the passenger compartment of an automobile" that the arrestee recently occupied, but also containers within the passenger compartment. *Belton*, 453 U.S. at 458-60.

¶12    The State and our dissenting colleagues seek to bring Gant's case within the *Belton* rule. Unlike *Belton*, however, this case deals not with the permissible scope of the search of

an automobile, but with the threshold question whether the police may conduct a search incident to arrest at all once the scene is secure. Because *Belton* does not purport to address this question, we must determine whether officer safety or the preservation of evidence, the rationales that excuse the warrant requirement for searches incident to arrest, justified the warrantless search of Gant's car. *Cf. Dean*, 206 Ariz. at 166, ¶¶ 32-34, 76 P.3d at 437 (relying on *Chimel* rationales in holding that arrestee was not a recent occupant of vehicle).

¶13 Neither rationale supports the search here. At the time of the search, Gant was handcuffed, seated in the back of a locked patrol car, and under the supervision of a police officer. The other two arrestees at the scene were also handcuffed and detained in the back of patrol cars, and the record reflects no unsecured civilians in the vicinity. At least four officers were on the scene. At that point, the police had no reason to believe that anyone at the scene could have gained access to Gant's vehicle or that the officers' safety was at risk. Indeed, one of the officers who searched Gant's car acknowledged at the evidentiary hearing that the scene was secure at the time of the search. Therefore neither a concern for officer safety nor the preservation of evidence justified the warrantless search of Gant's car. Absent either of these *Chimel* rationales, the search cannot be upheld as a

lawful search incident to arrest.[2]

¶14    Nor does this case require this Court to "reconsider *Belton*." *See* Dissent ¶ 27.   *Belton* dealt with a markedly different set of circumstances from those present in this case. The four unsecured occupants of the vehicle in *Belton* presented an immediate risk of loss of evidence and an obvious threat to the lone officer's safety that are not present in Gant's case. *See Belton*, 453 U.S. at 455-56.   Thus, in *Belton*, *Chimel*'s justifications were satisfied and the search was "'strictly tied to and justified by' the circumstances which rendered its initiation permissible."  *Id.* at 457 (quoting *Terry*, 392 U.S. at 19).   Here, to the contrary, because Gant and the other two arrestees were all secured at the time of the search and at least four officers were present, no exigencies existed to justify the vehicle search at its inception.  *Belton* therefore does not support a warrantless search on the facts of this case.

¶15    It is possible to read *Belton*, as the State and the Dissent do, as holding that because the interior of a car is generally within the reach of a recent occupant, the *Belton* bright-line rule eliminates the requirement that the police

---

[2]    We agree with Justice Scalia's statement that applying the *Belton* doctrine to justify a search of the car of a person handcuffed and confined in a police car "stretches [the doctrine] beyond its breaking point." *Thornton*, 541 U.S. at 625 (Scalia, J., concurring in the judgment).

assess the exigencies of the situation. But, if no exigency must justify the warrantless search, it would seem to follow that a warrantless search incident to an arrest could be conducted hours after the arrest and at a time when the arrestee had already been transported to the police station. Yet the Court was careful in *Belton* to distinguish *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565 (1991), in which it had rejected an argument that a search of a footlocker more than an hour after the defendants' arrests could be justified as incidental to the arrest. In doing so, the Court noted that the search occurred "after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency." *Belton*, 453 U.S. at 462 (quoting *Chadwick*, 433 U.S. at 15). Such a distinction would be wholly unnecessary under the State's interpretation of *Belton*.

¶16 Relying on language in *United States v. Robinson*, 414 U.S. 218 (1973), the State next maintains that the *Chimel* justifications are presumed to exist in all arrest situations simply by "the fact of the lawful arrest," *id.* at 235, and so it need not show that either *Chimel* rationale existed at the time of the search.

- 10 -

¶17    But *Robinson* does not hold that *every* search following an arrest is excepted from the Fourth Amendment's warrant requirement; if it did, the Court's opinions in the cases following *Chimel* would hardly have been necessary.  Rather, *Robinson* teaches that the police may search incident to an arrest without proving in any particular case that they were concerned about their safety or the destruction of evidence; these concerns are assumed to be present in every arrest situation.  Once those concerns are no longer present, however, the "justifications [underlying the exception] are absent" and a warrant is required to search.  *Preston v. United States*, 376 U.S. 364, 367-68 (1964); *accord Chambers v. Maroney*, 399 U.S. 42, 47 (1970) ("[T]he reasons that have been thought sufficient to justify warrantless searches carried out in connection with an arrest no longer obtain when the accused is safely in custody at the station house."); *see also Chadwick*, 433 U.S. at 15. Similarly, when, as here, the justifications underlying *Chimel* no longer exist because the scene is secure and the arrestee is handcuffed, secured in the back of a patrol car, and under the supervision of an officer, the warrantless search of the arrestee's car cannot be justified as necessary to protect the officers at the scene or prevent the destruction of evidence.

¶18    The State also argues that the Supreme Court's recent decision in *Thornton*, 541 U.S. 615, compels a contrary result.

- 11 -

In *Thornton*, an officer in an unmarked patrol car ran a check on the license plate of a suspicious car and discovered that the plate was not registered to that car. *Id.* at 617-18. Before the officer could pull the car over, Thornton parked and alighted from the car. *Id.* at 618. The officer parked his patrol car behind Thornton's car, exited, and approached him. *Id.* Thornton agreed to a pat down search, during which the officer felt a bulge in Thornton's pocket. *Id.* Thornton admitted possessing drugs and produced bags containing marijuana and crack cocaine. *Id.* The officer arrested and handcuffed Thornton and placed him in the back of the patrol car. *Id.* The officer then searched Thornton's car and found a gun. *Id.*

¶19    Although the facts in *Thornton* resemble those in the case before us, the case is distinguishable. Thornton never claimed that being placed in the patrol car removed the *Chimel* justifications for the search; rather, he challenged the lawfulness of the search of his car on the ground that he was out of his car before his encounter with the police began. *Id.* at 619. Thus the Supreme Court's opinion addressed only whether the *Belton* rule applies when an officer does not initiate contact with a vehicle's occupant until after the occupant has left the vehicle. *Id.* at 617, 622 n.2 (declining to address question on which Court did not grant review), 624 n.4 (plurality declining to address questions other than "whether

the [*Belton* rule] is confined to situations in which the police initiate contact with the occupant of a vehicle while that person is in the vehicle"). The answer to that question turned on whether, having stepped out of his car, Thornton was a recent occupant for purposes of *Belton* when he was arrested. *See id.* at 622-24. The Supreme Court concluded that he was:

> [W]hile an arrestee's status as a "recent occupant" may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him.

*Id.* at 622 (footnote omitted).[3]

¶20 Because *Thornton*'s holding was carefully limited to the question presented, the Supreme Court did not address whether, even if an arrestee is a recent occupant, a search of the arrestee's vehicle is nonetheless unlawful if concerns for officer safety or destruction of evidence – the *Chimel* justifications – no longer exist at the time of the search. *See id.* at 622 n.2, 624 n.4.

¶21 We are aware that most other courts presented with similar factual situations have found *Belton* and *Thornton* dispositive of the question whether a search like the one at

---

[3] Gant concedes that he was a recent occupant of his car at the time he was arrested, a concession borne out by the facts: Gant was arrested immediately after alighting from his car and within eight to twelve feet of it. *See Thornton*, 541 U.S. at 622; *Dean*, 206 Ariz. at 166, ¶ 30, 76 P.3d at 437.

- 13 -

issue was incident to arrest. *E.g.*, *United States v. Mapp*, 476 F.3d 1012, 1014-15, 1019 (D.C. Cir.) (upholding search of arrestee's car conducted after he had been handcuffed and placed in patrol car), *cert. denied*, 75 U.S.L.W. 3695 (Jun. 25, 2007); *United States v. Hrasky*, 453 F.3d 1099, 1100, 1103 (8th Cir. 2006) (same), *cert. denied*, 127 S. Ct. 2098 (2007); *United States v. Osife*, 398 F.3d 1143, 1144, 1146 (9th Cir. 2005) (same); *accord State v. Waller*, 918 So. 2d 363, 364, 366-68 (Fla. Dist. Ct. App. 2005) (upholding search of arrestee's truck conducted after he was handcuffed and "secured at the back of the truck"); *Rainey v. Commonwealth*, 197 S.W.3d 89, 91, 95 (Ky. 2006) (upholding search of arrestee's car conducted after he was handcuffed and "so far from his vehicle that it was unlikely he could have accessed it"), *cert. denied*, 127 S. Ct. 1005 (2007); *State v. Scott*, 200 S.W.3d 41, 43-44 (Mo. Ct. App. 2006) (upholding search of arrestee's car conducted after he had been handcuffed and placed in patrol car); *see also Thornton*, 541 U.S. at 628 (Scalia, J., concurring in the judgment, citing cases upholding searches conducted after arrestee had been handcuffed and secured in patrol car). We do not, however, read *Belton* or *Thornton* as abandoning the *Chimel* justifications for the search incident to arrest exception. *See Thornton*, 541 U.S. at 621 ("In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer

- 14 -

safety and the destruction of evidence as the arrest of one who is inside the vehicle."); *Belton*, 453 U.S. at 460 n.3 ("Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests."). Because neither *Belton* nor *Thornton* addresses the precise question presented here, we must, if we are to maintain our constitutional moorings, rely on *Chimel*'s rationales in reaching our holding.[4]

¶22 Amici Arizona Law Enforcement Legal Advisors' Association and Arizona Association of Chiefs of Police assert that, as a result of our holding, police officers will not secure arrestees until after they have searched the passenger compartment of an arrestee's vehicle, thus jeopardizing the officers' safety. We presume that police officers will exercise proper judgment in their contacts with arrestees and will not engage in conduct that creates unnecessary risks to their safety or public safety in order to circumvent the Fourth Amendment's

---

[4] Other courts have followed this approach as well. *See Ferrell v. State*, 649 So. 2d 831, 833 (Miss. 1995) (holding that search of arrestee's car conducted after he had been handcuffed and placed in patrol car did not fall within search incident to arrest exception because the rationales underlying the exception were absent); *State v. Greenwald*, 858 P.2d 36, 37 (Nev. 1993) (same, citing *Chimel*).

warrant requirement. In this technological age, when warrants can be obtained within minutes, it is not unreasonable to require that police officers obtain search warrants when they have probable cause to do so to protect a citizen's right to be free from unreasonable governmental searches.

¶23 We recognize the importance of providing consistent and workable rules to guide police officers in making decisions in the field. *Belton* sought to address this concern by creating a bright-line rule regarding the scope of automobile searches incident to arrest. The Supreme Court has not, however, adopted a bright-line rule for determining whether a warrantless search of an automobile is justified to begin with. In the absence of such a rule, we look to the circumstances attending the search to determine whether a warrant was required. *See Dean*, 206 Ariz. at 166, ¶ 34, 76 P.3d at 437 (examining "the totality of the facts" in determining the necessity for a warrant).[5] When,

---

[5] The Dissent suggests that the majority opinion departs from a "'straightforward rule' that does not depend on case-by-case adjudication." Dissent ¶ 39. But our dissenting colleagues concede that a *Belton* search is proper only if it is "a contemporaneous incident" of the arrest. *Id*. ¶ 38. Determining whether the search is a contemporaneous incident, however, requires the very case-by-case examination of the facts that the Dissent criticizes. *See Preston*, 376 U.S. at 367. Indeed, *Thornton* teaches that a determination that the defendant was a recent occupant of the searched vehicle must also occur before the *Belton* rule regarding the permissible scope of a search applies. 541 U.S. at 622. Thus, this opinion does not eviscerate any existing bright-line rule; it merely inquires whether an exigency remains to justify the search when the defendant is locked in a

- 16 -

based on the totality of the circumstances, an arrestee is secured and thus presents no reasonable risk to officer safety or the preservation of evidence, a search warrant must be obtained unless some other exception to the warrant requirement applies.

¶24 The State has advanced no alternative theories justifying the warrantless search of Gant's car, and we note that no other exception to the warrant requirement appears to apply. The officers did not have probable cause to search Gant's car for contraband, as is required by the automobile exception. *See Chambers*, 399 U.S. at 51-52. No evidence or contraband was in plain view. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971) (plurality opinion). Moreover, the officers testified that they had no intention of impounding Gant's car until after they searched the passenger compartment and found the contraband. Thus the search cannot be characterized as an inventory search. *See South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). There being no other

---

police car, just as the Dissent would ask whether the search was reasonably contemporaneous to the arrest, and as the Court in *Thornton* inquired to determine whether the defendant was so recent an occupant as to present the threat of destruction of evidence or access to a weapon. If the exigency justifying a search incident to arrest disappears when the search is not proximate in time to the arrest (or when the arrestee is not a recent occupant of the car), it follows that the justifying exigency would also disappear once the arrestee no longer has any possible access to evidence or weapons.

exception to the warrant requirement justifying the search of Gant's car, the warrantless search was unlawful.

### III. CONCLUSION

¶25    For the foregoing reasons, we hold that the warrantless search of Gant's car was not justified by the search incident to arrest exception to the Fourth Amendment's warrant requirement.  The evidence obtained as a result of the unlawful search must therefore be suppressed.  We reverse the judgment of the superior court and affirm the judgment of the court of appeals suppressing the evidence, but vacate the opinion of the court of appeals.

_____
Rebecca White Berch, Vice Chief Justice

CONCURRING:


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


**B A L E S**, Justice, dissenting

¶26    Police officers immediately confronted Gant when he drove up and got out of his car; within minutes, they arrested him, placed him in handcuffs, and locked him in a patrol car; they then promptly searched his car, where they found a pistol and a bag of cocaine.  The majority holds that the warrantless

search cannot be justified as incident to Gant's arrest because, at the time of the search, there were no exigent concerns for either officer safety or the preservation of evidence. *See* Op. ¶¶ 13, 20.

**¶27**     Because I believe that the majority's reasoning and conclusion are inconsistent with the Supreme Court's decision in *New York v. Belton*, 453 U.S. 454 (1981), I respectfully dissent. Although there may be good reasons to reconsider *Belton*, doing so is the sole prerogative of the Supreme Court, even if later developments have called into question the rationale for its decision. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

**¶28**     *Belton* itself was an extension of the Court's holdings in *Chimel v. California*, 395 U.S. 752 (1969), and *United States v. Robinson*, 414 U.S. 218 (1973). In *Chimel*, the Court held that, incident to a lawful arrest, police may properly search the arrestee and the area within the arrestee's "immediate control" without a warrant. 395 U.S. at 763. Although "*Chimel* searches" are justified by general concerns for officer safety and the preservation of evidence, *see id.*, in *Robinson* the Court held that such searches are permissible regardless of whether, in the circumstances of a particular case, "there was present one of the reasons supporting the" exception to the warrant requirement, 414 U.S. at 235.

**¶29**     The Court in *Belton* considered the application of

*Chimel* and *Robinson* when police arrest an occupant or recent occupant of an automobile. There, an officer stopped a car and, having reason to believe the occupants unlawfully possessed marijuana, ordered the driver and his three companions out of the car and placed them under arrest. 453 U.S. at 455-56. After searching each individual, the officer then searched the car's passenger compartment, where he discovered a jacket on the back seat. *Id.* at 456. He opened one of the jacket pockets and found cocaine. *Id.*

¶30    *Belton* upheld the officer's search of the jacket as a valid search incident to arrest even though it occurred after the defendant had been removed from the car and could not reach the jacket. *Id.* at 462-63. The Court first extended the *Chimel* exception to the passenger area of a car by adopting the "generalization" that an arrestee might reach within this area to grab a weapon or destroy evidence. *Id.* at 460. Having defined the area of the suspect's "immediate control" to include the passenger compartment, the Court went on to hold that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment" and "the contents of any containers found within." *Id.* (footnote omitted).

¶31    The search authorized by *Belton* does not depend on a case-specific determination that there may be weapons or

evidence in the automobile. Indeed, the Court noted that its holding would allow searches of containers that "could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested." *Id.* at 461. The Court nonetheless concluded that the lawful arrest itself justified the search. Quoting *Robinson*, the Court noted that "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would . . . be found." *Id.*

¶32 In holding that the search of Gant's automobile violated the Fourth Amendment, the majority's analysis conflicts with *Belton* in three respects. The majority concludes that the search was not incident to Gant's arrest because the *Chimel* concerns for officer safety and preservation of evidence were not present. *See* Op. ¶ 13 ("Absent either of these *Chimel* rationales, the search cannot be upheld as a lawful search incident to arrest.").

¶33 The validity of a *Belton* search, however, clearly does not depend on the presence of the *Chimel* rationales in a particular case. Indeed, in *Belton*, the New York Court of Appeals, much like the majority here, held that the search could "not be upheld as a search incident to a lawful arrest where

there is no longer any danger that the arrestee or a confederate might gain access to the article." 453 U.S. at 456 (quoting *People v. Belton*, 407 N.E.2d 420, 421 (N.Y. 1980)). In reversing the state court and upholding the search, the Court in *Belton* did not question the state court's finding that the jacket was inaccessible. Justice Brennan, dissenting in *Belton*, pointedly noted that "the Court today substantially expands the permissible scope of searches incident to arrest by permitting police officers to search areas and containers the arrestee could not possibly reach at the time of arrest." *Id.* at 466.

¶34    Justice Brennan explicitly made the argument that the majority adopts here. "When the arrest has been consummated and the arrestee safely taken into custody, the justifications underlying *Chimel*'s limited exception to the warrant requirement cease to apply: at that point there is no possibility that the arrestee could reach weapons or contraband." *Id.* at 465-66. While these observations have force, if they did not persuade a majority of the Supreme Court in *Belton*, I do not think it is appropriate for our Court to effectively rewrite *Belton* as embracing them now.

¶35    *Belton* is also inconsistent with the majority's focus on the *Chimel* rationales at the time of the *search*. *See* Op. ¶¶ 13-14. In *Belton* itself the search did not take place until after the officer had already removed the defendant from the

car. 453 U.S. at 456. The Court did not consider whether one of the *Chimel* rationales was present at the time of the search; instead, the Court noted that the search was justified by the arrest itself. *Id.* at 461. That the jacket was within the passenger compartment in which Belton "had been a passenger just before he was *arrested*," meant that it was within his "immediate control" for purposes of the search incident to arrest. *Id.* at 462 (emphasis added).

¶36 Because a *Belton* search is justified by circumstances that the Supreme Court thought generally exist upon the arrest of the occupant of a vehicle, the validity of the search does not depend on particularized concerns for officer safety or preservation of evidence at the time of the search. Thus, *Belton* rejected the argument that the search of the jacket in that case was improper because it did not occur until after the officer had reduced it to his "exclusive control." *Id.* at 461 n.5. Recognizing the implications of the Court's reasoning, Justice Brennan noted, "Under the approach taken today, the result would presumably be the same even if [the officer] had handcuffed Belton and his companions in the patrol car before placing them under arrest . . . ." *Id.* at 468.

¶37 The point noted by Justice Brennan in his dissent has been recognized by nearly every appellate court that has since considered the issue: *Belton* implies that warrantless searches

may be conducted even when the arrestee has been handcuffed and locked in a patrol car. *See, e.g.*, *United States v. Hrasky*, 453 F.3d 1099, 1101 (8th Cir. 2006) (stating that the incapacitation of the arrestee does not invalidate a subsequent search incident to arrest under *Belton*), *cert. denied*, 127 S. Ct. 2098 (2007); *United States v. Weaver*, 433 F.3d 1104, 1107 (9th Cir.) (concluding that *Belton* controls where the arrestee is handcuffed and locked in a patrol car), *cert. denied*, 126 S. Ct. 2053 (2006); *United States v. Wesley*, 293 F.3d 541, 547-49 (D.C. Cir. 2002) (same); *United States v. Humphrey*, 208 F.3d 1190, 1202 (10th Cir. 2000) (same); 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.1(c), at 517 & n.89 (4th ed. 2004) (listing cases).

¶38 That the *Chimel* rationales need not be present in a particular case does not, as the majority contends, mean that police may conduct warrantless searches hours after an arrest. *See* Op. ¶ 15. *Belton* upheld the warrantless search of a vehicle's passenger compartment "as a *contemporaneous incident*" of the occupant's arrest. 453 U.S. at 460 (emphasis added). In so ruling, the Court distinguished *United States v. Chadwick*, 433 U.S. 1 (1977), as not involving a search incident to an arrest, *see* 453 U.S. at 461-62. The post-arrest search in *Belton* was justified because it was incidental to the arrest, not because other exigencies were present that were absent in

*Chadwick*.  Thus, although *Belton* does not require a warrantless search to occur simultaneously with the arrest, it must occur within some temporal proximity.  *See Hrasky*, 453 F.3d at 1101 (discussing decisions requiring search to occur "roughly contemporaneous with the arrest" or within a "reasonable time" after police obtain control of the vehicle); *United States v. Butler*, 904 F.2d 1482, 1484 (10th Cir. 1990) (concluding that search of item found in vehicle at police station not contemporaneous with arrest); *State v. Smith*, 813 P.2d 888, 891 (Idaho 1991) (stating that half hour delay between arrest and search permissible); *State v. Kunkel*, 455 N.W.2d 208, 210 (N.D. 1990) (concluding that search at police station not contemporaneous with earlier arrest).

¶39    The majority also departs from *Belton*'s determination that searches in this context should be guided by a "straightforward rule" that does not depend on case-by-case adjudication.  *See* 453 U.S. at 458-59.  The majority concludes that a *Belton* search is not justified unless, "based on the totality of the circumstances," there is a "reasonable risk to officer safety or the preservation of evidence."  Op. ¶ 23.  Such an inquiry can only be made on a case-specific basis, initially by officers in the field and, if a search is later challenged, post-hoc by reviewing courts.  This approach is at odds with the core premise of *Belton*.  *See Thornton v. United*

*States*, 541 U.S. 615, 622-23 (2004) ("The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within reach of an arrestee at any particular moment, justifies the sort of generalization which *Belton* enunciated.").[6]

¶40      The bright-line rule embraced in *Belton* has long been criticized and probably merits reconsideration. *Belton* created a significant exception to the Fourth Amendment's warrant requirement by making a generalization about the exigencies of arrests involving automobiles and then allowing searches whether or not the concerns justifying the exception were present in any particular case. *Belton* thus rests on a "shaky foundation," *id.* at 624 (O'Connor, J., concurring in part), that has become even more tenuous over time. Police officers routinely secure suspects by handcuffing them before conducting *Belton* searches.

---

[6]    *Belton* itself does not completely avoid the need for case-by-case inquiry, inasmuch as the Court limited the exception to searches that are the contemporaneous incident of the arrest of a vehicle's occupant or recent occupant. Justice Brennan made this very point in his dissent. *See* 453 U.S. at 469-71. But this does not imply, as the majority contends, ¶ 23 n. 5, that *Belton*'s application should turn on a case-specific finding of exigent circumstances at the time of the search. Nor does *Thornton* suggest that a case-specific assessment of exigent circumstances should determine whether an arrestee is a "recent occupant" for purposes of the *Belton* exception. *See* 541 U.S. at 623 (refusing to limit *Belton* to searches in which police initiate contact with suspect as it would involve "inherently subjective" and "highly fact specific" determinations that *Belton* sought to avoid).

*Id.* at 628 (Scalia, J., joined by Ginsburg, J., concurring in the judgment) (noting that "[i]f it was ever true that" arrestees generally have access to passenger compartments, "it certainly is not true today"). *See generally* David S. Rudstein, Belton *Redux: Reevaluating* Belton's *Per Se Rule Governing the Search of an Automobile Incident to an Arrest*, 40 Wake Forest L. Rev. 1287, 1333-34 (2005) (discussing police practices).

¶41    But even if *Belton* were to be reconsidered, the approach adopted by the majority is only one of several possible alternatives. *See id.* at 1338-59. Although the majority revives a case-by-case approach focusing on the presence of the *Chimel* rationales at the time of the search, it would also be possible to imagine a bright-line limitation to *Belton*'s bright-line exception. For example, one could argue that a *Belton* search is never justified as "incident to arrest" if it occurs after a suspect is handcuffed outside the vehicle. Or perhaps *Belton* should be limited so it continues to allow searches of the passenger compartment but not containers found therein, *see Thornton*, 541 U.S. at 634 (Stevens, J., joined by Souter, J., dissenting), or even replaced by a rule "built on firmer ground," *id.* at 625 (O'Connor, J., concurring in part), that would allow warrantless searches when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle," *id.* at 632 (Scalia, J., joined by Ginsburg, J.,

concurring in the judgment).

¶42     If Gant had developed an argument under Article 2, Section 8, of the Arizona Constitution, we might properly have considered whether, as a matter of state law, to reject or modify the *Belton* rule.  Several other state courts have done so.  *See, e.g.*, *State v. Eckel*, 888 A.2d 1266, 1275-77 (N.J. 2006) (rejecting *Belton* rule under state constitution); *State v. Bauder*, 924 A.2d 38, 46 ¶ 19 (Vt. 2007) (describing state court decisions rejecting *Belton* rule under state constitutions). Here, however, we are faced only with arguments based on the Fourth Amendment.

¶43     We can add our voice to the others that have urged the Supreme Court to revisit *Belton*.  *See, e.g.*, *Weaver*, 433 F.3d at 1107 (noting that *Belton* "is broader than its stated rationale" and suggesting that the Supreme Court re-examine this issue). We cannot, however, take it upon ourselves to re-examine *Belton*'s interpretation of the Fourth Amendment.  Because *Belton* allows the search of Gant's vehicle, I respectfully dissent.

_____
W. Scott Bales, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice