DECISION
This matter is presently before the Court for a decision on Defendant's motion to suppress evidence following an evidentiary hearing. The Defendant specifically objects to the warrantless search of his automobile from which state police seized an unloaded .22 caliber Berretta semi-automatic handgun. The Defendant asserts that the search fails to fall within any of the following exceptions to the warrant requirement: the automobile exception, a "Terry pat down extension," a search incident to arrest, or, a search based on valid consent.
Trooper Sean McCarthy testified that on the date in question, July 23, 2007, he and his partner that evening, Trooper Philip D. Martin, were traveling north in their marked cruiser on Main Road in Tiverton. At approximately 11:20 p.m., McCarthy observed a silver sports car traveling in the opposite direction lacking illumination of its rear license plate. The troopers then reversed direction and activated their overhead lights in order to pull over the offending vehicle. McCarthy explained that the car did not come to a halt until several hundred feet after the troopers activated their lights. However, only ten to fifteen seconds elapsed from the activation of the lights to the point at which the Defendant pulled his car over. McCarthy positioned himself at the passenger side of the car while Martin approached the operator/Defendant to request his license, registration, and proof of insurance. The videotape of the stop, Exhibit 2, shows that the Defendant promptly complied with the trooper's request; specifically, a time lapse *Page 2 
of six seconds occurred from request to presentation of the documents.
Trooper Martin inquired of the Defendant why he did not pull over immediately after the overhead lights were activated. The Defendant explained that he was looking for a place to safely park his car out of the lane of travel.[1] Martin then responded that because there was no traffic he (the Defendant) should have stopped his car immediately. However, photographs of the area (Exs. A, B, D, E, F) clearly establish that the rural road has no breakdown lane and a shoulder, where any exists, is extremely narrow and closely bordered by telephone poles, large trees, stone walls, ditches, and/or chain link fence. The Defendant pulled over and stopped between two telephone poles with half of his Porsche sports car remaining in the travel lane.
Despite the fact that the Defendant's driving documents were completely in order and the Defendant was not cited for the equipment violation which precipitated the stop, Martin asked the Defendant to step out of his car. Martin described the Defendant as nervous and "looking to his right" while seated in the car. The Defendant immediately stepped out in a docile manner and cooperated with Martin's pat-down search which yielded only a cellular phone. The videotape timer indicates that the frisk of the Defendant commenced at two minutes and three seconds and continued until three minutes and fifteen seconds. During that time Martin repeatedly went over the same areas of the Defendants hip and thigh area, even inserting his fingers into the small coin pockets on the Defendant's jeans.
The Defendant was then directed to stand behind his car with Trooper McCarthy. At three minutes and twenty-five seconds the Defendant was standing still with his hands in his pockets at the rear of his car with Trooper McCarthy to his left. With the Defendant being *Page 3 
"guarded" by Trooper McCarty the Defendant was in no position to gain access to any weapons[2] or contraband.
At three minutes and thirty-seven seconds Trooper Martin commenced his search of the interior of the car. At some point McCarthy inquired of the Defendant as to whether there was anything in the car the troopers should know about and at approximately five minutes the Defendant revealed to Trooper McCarthy that he had a pistol stored in a compartment behind the passenger seat which he used for his own protection when carrying money from his restaurant. The Defendant said he did not know he needed a permit and had been doing this for twenty years. It is not until forty-one minutes and twenty-three seconds that the Defendant is taken into custody and handcuffed.
The Defendant argues that "[o]nce the purpose of [a] stop has been accomplished, a police officer may not detain a suspect and `embark
upon [an] expedition for evidence in the hope that something might turn up.'" State v. Casas, 900 A.2d 1120, 1133 (R.I. 2006) (quotingUnited States v. Babwah, 972 F.3d 30, 34 (2d Cir. 1992)); State v.Parra, 941 A.2d 799, 804 (R.I. 2007). "A motor vehicle stop must be reasonable in purpose and duration. `If an investigative stop based on reasonable suspicion continues too long or becomes unreasonably intrusive, it will ripen into a de facto arrest that must be based on probable cause.'" Casas, 900 A.2d at 1133 (quoting United States v.Glover, 957 F.3d 1004, 1011 (2d Cir. 1992); Def.'s Mem. at 9-10.
The State counters that "upon concluding the pat-down search [of the Defendant], Trooper Martin was likewise justified in commencing a search of the immediate area of the driver's compartment to ensure that there were no weapons within defendant's reach." (State's Mem. at 3.) *Page 4 
However, the videotape of the stop provides unassailable evidence that there was not any indication that the Defendant had either the inclination or ability to retrieve anything from his vehicle. The deportment of the Defendant, throughout this very lengthy detention, was orderly, sedate, respectful, and compliant. During the search he remained behind his own car standing in the same place with an armed trooper at his side while the other trooper was searching his car.
Following the Terry frisk of the Defendant which assured the troopers of their own personal safety, the Defendant, after being cited for the equipment violation (which he was not), should have been free to go. Even if the Defendant had been arrested (and clearly there was no probable cause to arrest him for anything) prior to the search the Court believes, in these circumstances, that the search exceeded constitutionally permissible bounds. This Court recognizes and respects the tremendously difficult and dangerous situations our law enforcement personnel are faced with each day. They should not have to carry the additional burden of making swift and safe decisions while mentally reviewing principles of constitutional law. This fall the United States Supreme Court will hear arguments regarding warrantless searches, the decision upon which will provide much needed clarification on the issue. In the case to be before that Court the "threshold question [is] whether the police may conduct a search incident to arrest at all once the scene is secure." Arizona v. Gant, 162 P.3d 640 (Ariz. 2007).[3] InGant, the Arizona Supreme Court held that "when the scene is secure and the arrestee is handcuffed, seated in the back of a patrol car, and under the supervision of a police officer . . . a warrantless search *Page 5 
[of the arrestee's car] is not justified." Id. at 641. Since the scene in the instant case was secure and the Defendant who posed no threat, was not under arrest, and was under the supervision of a trooper, the Court must grant the motion to suppress.
[1] The Defendant was well-familiar with the area of the stop as it was his route to and from his home and his restaurant.
[2] It should be noted that the engine in the Porsche is rear mounted so the Defendant had no access to its trunk which is located in the traditional "hood" area.
[3] The United States Supreme Court granted certiorari on February 25, 2008 to answer the following question: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?"Arizona v. Gant, 128 S. Ct. 1443, 1443 (2008). The motion of the National Association of Police Organizations, Inc., for leave to file a brief as amicus curiae, was granted. Id.