B. FLETCHER, PAEZ,
and N.R. SMITH, Circuit Judges, concurring in the denial of rehearing en banc:
Judge Bea’s dissent presents a distorted view of what this case is all about. It requires a response that can be part of the public record. Otherwise our panel’s reasoned response to the en banc call would remain hidden from public view.
At the time of our original disposition, the Supreme Court had not decided Arizona v. Gant, — U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Our circuit interpreted New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), to allow law enforcement to search the passenger compartment of a vehicle so long as the search was “roughly contemporaneous with’ the arrest” of the vehicle’s occupant. United States v. Weaver, 433 F.3d 1104, 1106 (9th Cir.2006) (citation and quotation marks omitted). Accordingly, our panel in its original disposition concluded that the search of Defendant Gonzalez’s vehicle did not violate the Fourth Amendment.
While Gonzalez’s petition for certiorari was pending, the Supreme Court decided Gant, holding that a number of state and federal courts, including ours, had improperly interpreted Belton. Far from announcing a new rule and overruling Belton, the Court explained that our precedent had misinterpreted Belton by ignoring that Belton is the progeny of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We had “untether[ed]” Belton “from the justifications underlying the Chimel exception,” which allows searches incident to lawful arrests, but limits those searches solely to “the arrestee’s person and the area ... within which he might gain possession of a weapon or destructible evidence” at the time of the search. Gant, 129 S.Ct. at 1716, 1719 (citation and quotation marks omitted).
The Supreme Court granted Gonzalez’s certiorari petition, vacated our panel’s decision, and remanded to us “for further consideration in light of Arizona v. Gant.” Quintana v. United States, — U.S. -, 129 S.Ct. 2156, 173 L.Ed.2d 1152 (2009) (citation omitted). In our decision on remand, we faithfully followed its instructions. We applied Gant consistent with the Supreme Court’s precedents on the application of the exclusionary rule and on retroactivity. See United States v. Gonzalez, 578 F.3d 1130 (9th Cir.2009).
Judge Bea’s bold pronouncement that we disregarded Herring v. United States, — U.S. -, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), is wrong.
Indeed, we followed the teaching of the Herring Court that “the benefits of deterrence must outweigh the costs.” 129 S.Ct. at 700. In Gant, the Court decided that in cases such as Gonzalez, the benefits of deterrence do outweigh the costs. It held that where, as in Gant, “it is clear that a[law enforcement] practice is unlawful, individuals’ interest in its discontinuance clearly outweighs any law enforcement ‘entitlement’ to its persistence.” Gant, 129 S.Ct. at 1723. Because the unconstitution *1097 ality of the searches in Gant and this case was “clear,” the searches never should have occurred. They were unlawful ab initio. As a consequence, Gant held that deterrence of such searches trumps the costs of exclusion. Judge Bea’s argument in support of the dissenters in Gant is to no avail. Let him disagree with the Supreme Court, if he must, but not with our adherence to the Court’s dictates.
Krull, for its part, is inapposite. It concerns law enforcement’s reliance on a statute and not the interpretation of case law. The controlling authority for this case was United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), not Krull as advocated by Judge Bea. The panel correctly followed Johnson.
Finally, the reader should bear in mind that this case deals with a defendant’s right to suppress evidence obtained by an unconstitutional search. It does not involve whether the officers who conducted the search are entitled to qualified immunity. The rights of the defendant, not those of the police, are at issue. The dissent persists in its view that discipline of police is at issue rather than individual rights. See Dissent at 1109 (“Here, the panel confuses the retroactive application of a Supreme Court decision in the area of individual rights (a jury picked without racial motivation) with what is an area of societal rights (suppression of evidence to discipline police).”).
I
The precedents that controlled our decision in Gonzalez were those dealing with retroactivity. All agree that when Gant was decided, defendant Gonzalez’s conviction had not yet become final. All agree that under Gant, the search in our case was unconstitutional. Looking to the Supreme Court’s precedents on retroactivity, we applied Gant, holding that the search was unconstitutional and that the evidence seized should be suppressed.
When the Supreme Court clarifies the boundaries of a constitutional search in one case, in fairness, that clarification must be consistently applied to all cases that are not yet final. That policy was applied in Johnson, 457 U.S. 537, 102 S.Ct. 2579, and Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
The question in Johnson was whether Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), should be applied retroactively to exclude evidence in cases pending on direct appeal. The government argued that the exclusionary rule should not apply to evidence seized in good-faith reliance on pre-Payton law. We quote the Court’s rejection of that argument:
The Government [relies] on [United States v.] Peltier's broad language: “If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment” (emphasis added). The Government reads this language to require that new Fourth Amendment rules must be denied retroactive effect in all cases except those in which law enforcement officers failed to act in good-faith compliance with then-prevailing constitutional norms.
... Under the Government’s theory, because the state of Fourth Amendment law regarding warrantless home arrests was “unsettled” before Payton, that ruling should not apply retroactively even to cases pending on direct appeal when Payton was decided. *1098 Yet the Government’s reading of Peltier would reduce its own “retroactivity test” to an absurdity. Under this view, the only Fourth Amendment rulings worthy of retroactive application are those in which the arresting officers violated preexisting guidelines clearly established by prior cases. But as we have seen above, cases involving simple application of clear, pre-existing Fourth Amendment guidelines raise no real questions of retroactivity at all. Literally read, the Government’s theory would automatically eliminate all Fourth Amendment rulings from consideration for retroactive application.
The Government’s [next] claim is that Peltier's logic suggests that retroactive application of Fourth Amendment decisions like Payton even to cases pending on direct review — would not serve the policies underlying the exclusionary rule....
If, as the Government argues, all rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close cases, law enforcement officials would have little incentive to err on the side of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice would be excluded only in the one case definitively resolving the unsettled question. Failure to accord any retroactive effect to Fourth Amendment rulings would “encourage police or other courts to disregard the plain purport of our decisions and to adopt a let’s-wait-until-it’s-decided approach.”
457 U.S. at 559-61, 102 S.Ct. 2579 (citations omitted). Like Payton, Gant clarified a point of law that the Court had not yet explicitly addressed: the scope of the Court’s holding in Belton. Compare State v. Gant, 216 Ariz. 1, 162 P.3d 640, 645 (2007) (majority opinion) (“We do not ... read Belton or Thornton as abandoning the Chimel justifications for the search incident to arrest exception.”), with id. at 647 (Bales, J., dissenting) (“The validity of a Belton search ... clearly does not depend on the presence of the Chimel rationales in a particular ease.”). As does Judge Bea, the United States in Johnson argued that excluding evidence seized in violation of Payton would not appreciably deter police misconduct. That argument was made, and the Johnson Court firmly rejected it; our panel was compelled to do so also.
Griffith — which was decided after the Supreme Court recognized the good-faith exception in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) — reaffirmed Johnson’s “holding that ‘subject to [certain exceptions], a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered.’ ” 479 U.S. at 324, 107 S.Ct. 708 (quoting Johnson, 457 U.S. at 562, 102 S.Ct. 2579). Like Johnson, it explicitly considered and rejected “ ‘reliance by law enforcement authorities on the old standards’ ” as a reason not to apply a Fourth Amendment decision retroactively. Id. at 324-25, 107 S.Ct. 708 (quoting Johnson, 457 U.S. at 549, 102 S.Ct. 2579). Johnson and Griffith compel the result the panel reached.
Judge Bea relies on United States v. Peltier, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), which declined to apply Almeida-Sanehez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), retrospectively. In light of Johnson, we think his reliance misplaced. The Johnson Court made clear that Peltier's holding applied only to cases that *1099 “work[ed] a sharp break in the web of the law.” 457 U.S. at 551, 102 S.Ct. 2579 (citation and quotation marks omitted). The Gant majority stated that its holding worked no such break. See Gant, 129 S.Ct. at 1719, 1722 & n. 9 (reasoning that holding followed straightforwardly from Chimel and that the facts of Belton and Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), were “easily distinguished”). In arguing otherwise, Judge Bea sides with the Gant dissenters. See id. at 1726 (Alito, J., dissenting) (contending that majority’s holding created a “new rule”).
Judge Bea also relies on Krull to argue against the exclusion of evidence in this case. Krull dealt with law enforcement reliance on a statute, which like most statutes, carries the presumption of constitutionality. 480 U.S. at 342, 107 S.Ct. 1160. Here, by contrast, law enforcement relied on a misapplication of Belton that Gant deemed “elear[ly]” unconstitutional; Belton, when properly interpreted, would counsel all along that the searches in Gant and Gonzalez were unconstitutional. Gant, 129 S.Ct. at 1723.
More fundamentally, the fact remains that when the Supreme Court in Johnson was faced with precisely the question that confronted our panel, it held that the exclusionary rule applied to cases pending on direct appeal. Johnson directly controls. Until such time as the Court were to overrule Johnson, it is Johnson and not Krull that we must follow.
II
The panel’s decision is directly supported by Gant itself. In Gant, the Supreme Court interpreted Belton, 453 U.S. 454, 101 S.Ct. 2860, to allow a vehicle search incident to an arrest of the vehicle’s occupant only where the “arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Gant, 129 S.Ct. at 1723. This holding prompted a vigorous dissent:
The Belton rule has been taught to police officers for more than a quarter century. Many searches' — almost certainly including more than a few that figure in cases now on appeal — were conducted in scrupulous reliance on that precedent. It is likely that, on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the Belton rule.
Id. at 1728 (Alito, J., dissenting).
The majority, however, did
not agree with the contention in Justice Alito’s dissent ... that consideration of police reliance interests requires a different result. Although it appears that the State’s reading of Belton has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years, many of these searches were not justified by the reasons underlying the [search-incident-to-arrest] exception.... The fact that the law enforcement community may view the State’s version of the Belton rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional rights protected. If it is clear that a practice is unlawful, individuals’ interest in its discontinuance clearly outweighs any law enforcement “entitlement” to its persistence.
Id. at 1722-23 (footnote omitted). The Gant majority ruled as it did precisely because the “interest that all individuals share in having their constitutional rights protected” outweighs good-faith “police reliance interests.” In short, the Supreme *1100 Court has already decided that in a case such as ours, “the benefits” of the exclusionary rule “outweigh the costs.” Herring, 129 S.Ct. at 700.
It is no answer to say, as does Judge Bea, that the majority and the dissent were arguing about stare decisis and not deterrence of “clear[ly] ... unlawful” searches. Gant, 129 S.Ct. at 1723. The majority expressly stated that it was not overruling Belton, see id. at 1722 n. 9, and thus it also implicitly recognized that the doctrine of stare decisis had little, if any, force in Gant. See id. at 1722 (“[W]e would be particularly loath to uphold an unconstitutional result in a case that is so easily distinguished from the decisions that arguably compel it.... It is thus unsurprising that Members of this Court who concurred in the judgments in Belton and Thornton also concur in the decision in this case.”). The flash point of disagreement between the majority and dissent in Gant was not so much stare decisis as “police reliance interests.” See id. at 1722-23. Justice Alito’s concern about “the suppression of evidence gathered in many searches carried out in good-faith reliance on well-settled case law,” id. at 1726 (Alito, J., dissenting) (emphasis added), demonstrates that Gant was about suppression of evidence and not just the constitutionality of the search.
That the majority and dissenting opinions should have clashed over the exclusionary rule is not surprising, for in Gant, the Arizona Supreme Court had not simply declared the search unconstitutional, but had also ordered the exclusion of the evidence. State v. Gant, 162 P.3d at 646. By affirming the Arizona Supreme Court, the Court necessarily affirmed the exclusion of the evidence.
III
The panel’s decision is compelled by the Supreme Court’s retroactivity precedents and dictated by Gant. The court was right to deny en banc rehearing.