LAWSON, J., dissenting. I respectfully dissent. Article I, section 12, of the Florida Constitution, as amended in 1982, mirrors the protection against unreasonable searches and seizures found in the Fourth Amendment, but also mandate^ that this protection “shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” Id.[3] Clearly, we are bound by the United States Supreme Court’s Fourth Amendment jurisprudence, including the majority opinion in Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). In Davis, the United States Supreme Court held that the exclusionary rule is not to be applied “when the police conduct a search in objectively reasonable reliance on binding judicial precedent.” Id. at 239, 241, 131 S.Ct. 2419. The majority mistakenly fails to follow this binding precedent and, instead, applies the analysis in Justice Sotomayor’s separate opinion, in which she expresses her disagreement with the rule announced by the six-person Davis majority but explains that she would nevertheless reach the same result in Davis, given the facts of that case. By “facts,” here, I mean the state of the law at issue in, Davis. In other words, Justice Sotomayor would have excluded the evidence in that case if the law relied upon by police was merely “binding precedent,” but agreed to application of the “good faith exception” in Davis because the law in question had also become well-settled. See id. at 250, 131 S.Ct. 2419 (Sotomayor, J., concurring in judgment). That is the analysis of our majority here. However, we are bound to follow Davis, which properly fashioned a different rule—one grounded in the Davis majority’s clear understanding of the purpose and limits of the exclusionary rule, as well as the interests at stake. As explained in Davis: The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The Amendment says nothing about suppressing- evidence obtained in violation of this, command, That rule— the exclusionary rtile—is a prudential doctrine, created by this Court to compel respect for the constitutional, guaranty. Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule’s sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations. Our cases have thus limited the rule’s operation to situations in which this purpose is thought most efficaciously served. Where suppression fails to yield appreciable deterrence, exclusion is clearly unwarranted. Id. at 236-37, 131 S.Ct. 2419 (internal citations, quotation marks, and quptations omitted). The Davis majority further explained that, although “[r]eal deterrent value is a necessary condition for exclusion, ... it is not a sufficient one.” Id. at 237, 131 S.Ct. 2419 (internal quotation omitted). This is. the critical juncture at which our majority, like Justice Sotoma-yor, diverges from the opinion of the Court in Davis in its philosophical view-as to how the exclusionary rule should be applied. Both would prefer a rule grounded solely in. deterrence of potential Fourth Amendment violations. But, as explained in Davis; The analysis must also account for the substantial social costs generated by the rule [because] [exclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment. Our cases hold that society must swallow this bitter pill when necessary, but only as a last resort. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs. Id. (internal citations and quotation marks omitted). Factoring in the reality of these societal costs, the United States Supreme Court’s focus has shifted from the deterrent effect of exclusion to “the flagrancy of the police misconduct at issue.” Id. at 238, 131 S.Ct. 2419 (internal quotation omitted). Given that focus, it is easy to see why the United States Supreme Court chose the rule that it did in this context over the rule that Justice Sotomayor and our majority prefer: There is simply no way that reliance on binding legal precedent—whether well-settled or not—can be cast as police misconduct, much less “flagrant” police misconduct. The officer in this case relied upon case law that bound every trial court in Florida. The fact that the opinion had been issued by an intermediate appellate court, or that the appellate court had certified the question to our Court, does not change the relevant “facts”: (1) at the time of the search in this case, only one Florida appellate court had addressed the issue; (2) this sole appellate opinion held that no warrant was needed to search the contents of a cell phone lawfully seized incident to a valid arrest; and (3) this law was binding precedent throughout the State of Florida. Pardo v. State, 596 So.2d 665, 666 (Fla. 1992) (holding that decisions of a district court of appeal constitute binding appellate precedent and “represent the law of Florida unless and until they are overruled by this Court” (internal quotation omitted)). Our majority’s attempted explanation of the Davis majority opinion as also justified based upon the “well-settled” understanding of the “search incident to arrest” rule announced in New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), is simply not plausible. Although Davis recognized that Belton was “[fjor years ... widely understood to have set down a simple, brightline rale,” Davis, 564 U.S. at 233, 131 S.Ct. 2419, the Davis majority pointed out that “[n]ot every court ... agreed with this reading of Belton.” Id. at 234, 131 S.Ct. 2419. However, the only contrary case cited by the Davis majority, State v. Gant, 216 Ariz. 1, 162 P.3d 640 (2007), aff'd, Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), was decided approximately three months after Mr. Davis’s arrest “[o]n an April evening in 2007 ... in Greenville, Alabama.” Davis, 564 U.S. at 234-235, 131 S.Ct. 2419. Clearly, the Davis majority could have framed the issue as preferred by Justice Sotomayor with the same result. Instead, the Davis majority analyzed the issue based upon controlling precedent from the Eleventh Circuit Court of Appeals, which was binding in the Middle District of Alabama, where and when the search occurred. Id. at 235, 239-40, 131 S.Ct. 2419. The Court ultimately concluded that because police conducted the search in reliance upon “binding judicial precedent” in their federal district, the “absence of police culpability dooms Davis’s claim [that the exclusionary rule should apply].” Id. at 239-40, 131 S.Ct. 2419. Were we to apply this same analysis here, we would disapprove the Second District’s opinion and approve the First District’s opinion—and the evidence in this case would not be suppressed. Finally, it is worth noting that our majority’s opinion is antithetical to a significant proposition underlying the good-faith exception, which is also addressed by the Davis majority: the exclusionary rule should not be used to penalize an officer for judicial errors. Id. at 241, 131 S.Ct. 2419. This is not a new or novel idea, but the very “rationale behind” the good-faith exception, beginning with the seminal United States Supreme Court case addressing the exception, United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). See State v. McGill, 125 So.3d 343, 352 (Fla. 5th DCA 2013) (“The rationale behind the good faith exception is that the exclusionary rule ‘is designed to deter police misconduct rather than to punish the errors of judges and magistrates.’ ” (quoting Leon, 468 U.S. at 916, 104 S.Ct. 3405)). It would defy logic to suggest that a rule designed to allow law enforcement to rely upon the judgment of a single magistrate would have the same law enforcement officer question a rule of law announced in precedent from the appellate court binding in his or her jurisdiction. Cf. State v. Watt, 946 So.2d 108, 110 (Fla. 5th DCA 2007) (“In order to reject the application of the good faith exception in this case, we would need to conclude that an objectively reasonable police officer would have a better understanding of the law of search and seizure and probable cause than did the trial judge who issued the warrant.”). In contrast to this Court’s novel approach, the majority in Davis would encourage law enforcement officers to stay abreast of the law in their jurisdictions and govern themselves based upon the pronouncements in binding appellate precedent: About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and 'will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically authorizes a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty. That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before, and we reaffirm today, that the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity. Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule. Davis, 564 U.S. at 241, 131 S.Ct. 2419 (internal citation's and quotation marks omitted). We should apply Davis, as our Constitution requires, and hold that because the officers in this case acted in good-faith reliance on binding appellate precedent, the sexually explicit messages and images revealed during their search of Mr. Carpenter’s cell phone are not subject to the exclusionary rule. Therefore, I dissent. CANADY and POLSTON, JJ., concur. . "The commentary to the 1982 amendment states that the amendment was necessary to modify the exclusionary rule [in Florida] and to allow adherence by the Florida courts to the good faith exception adopted by the federal courts,” Crain v. State, 914 So.2d 1015, 1022-23 (Fla. 5th DCA 2005) (en banc).