**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

ADRICK ELIJAH RUCKES,
            *Defendant-Appellant.*

No. 08-30088

D.C. No.
3:07-cr-05313-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, District Judge, Presiding

Submitted November 9, 2009*
Seattle, Washington

Filed November 9, 2009

Before: Richard C. Tallman and Milan D. Smith, Jr.,
Circuit Judges, and Thomas M. Reavley, **
Senior Circuit Judge.

Opinion by Judge Tallman

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

15063

**COUNSEL**

Jeffrey C. Sullivan and Helen J. Brunner, United States Attorney for the Western District of Washington, Seattle, Washington, for the plaintiff-appellee.

Miriam Schwartz, Office of the Federal Public Defenders for the Western District of Washington, Tacoma, Washington, for the defendant-appellant.

**OPINION**

TALLMAN, Circuit Judge:

Adrick Ruckes ("Ruckes") was convicted of being a felon in possession of a firearm and possessing cocaine base with the intent to distribute following a search of his automobile. He moved to suppress the evidence discovered during that search: a 9mm handgun and over six grams of crack cocaine. After an evidentiary hearing, Judge Franklin D. Burgess of the Western District of Washington denied his motion.

Ruckes entered a conditional guilty plea and filed this timely appeal. He maintains that Washington State Trooper Kenyon Wiley's search was not valid incident to his arrest because he was not arrested until after contraband was located within the vehicle. Following the district court's analysis, the government proffers two alternative theories for upholding

the conviction. First, it argues that the search was proper because, under *New York v. Belton*, 453 U.S. 454 (1981), when officers have probable cause to effect a full custodial arrest of a vehicle's recent occupant, a search of the passenger compartment of the vehicle is warranted. Second, to the extent the search was not incident to Ruckes's arrest, the firearm and cocaine would have been discovered during a routine inventory search of the vehicle after impound. The district court relied on both grounds to uphold the search.

After this case was submitted for decision, the Supreme Court handed down *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009), which limits the applicability of *Belton* to situations where (1) "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search," or (2) it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." (Internal quotation marks and citation omitted). Because we find that Trooper Wiley's search of Ruckes's vehicle does not fit within either of these two narrow situations to satisfy the search-incident-to-arrest exception to the warrant requirement, we hold that this search cannot be sustained on this theory under the Fourth Amendment. However, because the district court did not err in alternatively holding that the drugs and firearm would have been uncovered during a routine inventory search of the vehicle upon impound, we affirm its denial of the motion to suppress under the doctrine of inevitable discovery.

# I

On September 2, 2006, Trooper Wiley conducted a traffic stop of a blue Toyota that was traveling fifteen miles per hour over the posted speed limit on Interstate Highway 5 near Tacoma, Washington. Trooper Wiley asked its driver, Ruckes, for his driver's license, car registration, and proof of insurance, and also notified Ruckes that the encounter was being recorded by video and audio devices. Ruckes informed

Trooper Wiley that he had neither a license nor any other form of identification. During this exchange, Trooper Wiley observed that the car's open center consol contained loose money and a prescription bottle with the label removed.

Trooper Wiley asked Ruckes to step out of the vehicle and completed a pat-down search of his person before placing him in the backseat of the patrol car. Once inside the cruiser, Trooper Wiley asked for Ruckes's full name and date of birth. He then ran a computer check, which revealed that Ruckes was driving on a license that had been suspended to enforce child support payments.

Trooper Wiley then asked whether, when he searched Ruckes's vehicle, he would find any contraband or illegal materials. When Ruckes questioned the reason for the search, Trooper Wiley responded that Ruckes's suspended license offense warranted his arrest as well as an inspection of the vehicle. Trooper Wiley further explained that because Ruckes had been ticketed for driving on a suspended license in the past, it was permissible to impound the car for thirty days. He asked if anyone else was available to take control of the vehicle, and Ruckes admitted that while the car belonged to his mother, she would probably be unable to remove it from the side of the freeway. Trooper Wiley testified at the suppression hearing that he would not have permitted Ruckes to drive the car away due to his suspended license, and though he might have considered permitting the owner—Ruckes's mother—to take possession of the vehicle, she was unavailable to do so. At the conclusion of the hearing, the district court found that Trooper Wiley was going to impound Ruckes's car.

Trooper Wiley then proceeded to conduct a search of the vehicle. Following this first search, he returned to the patrol car and placed Ruckes in handcuffs. By way of explanation, Trooper Wiley noted that he initially found a large bottle of crack cocaine sitting in the vehicle's center consol. Trooper Wiley again left the patrol car, and continued searching Ruck-

es's automobile, where he next uncovered a loaded 9mm handgun under the driver's seat. He used his portable radio to report discovery of the weapon, and finally returned to the patrol car to administer *Miranda* warnings to Ruckes.

On May 17, 2007, the Grand Jury indicted Ruckes on three federal charges: (1) being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) possessing cocaine base with the intent to distribute, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (3) possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Ruckes filed a motion to suppress the incriminating evidence, arguing that because Trooper Wiley failed to make a formal arrest prior to the search of his vehicle, the search was not valid incident to arrest.

The district court denied Ruckes's motion, concluding that Trooper Wiley possessed the requisite probable cause to arrest Ruckes at the time he conducted the search, and therefore it was a proper search incident to arrest. In the alternative, Judge Burgess ruled that because the officer would have impounded the car anyway, the evidence would inevitably have been discovered during inventory of the vehicle's contents. On January 4, 2008, Ruckes conditionally pleaded guilty to being a felon in possession of a firearm and possession of cocaine base with the intent to distribute, and he reserved the right to appeal the district court's suppression determination. He was sentenced on March 18, 2008, to 60 months in prison.

## II

"We review *de novo* motions to suppress, and any factual findings made at the suppression hearing for clear error." *United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992). "[I]nevitable discovery rulings are mixed questions [of law and fact] that . . . should be reviewed under a

clearly erroneous standard." *United States v. Lang*, 149 F.3d 1044, 1048 (9th Cir. 1998).

## III

**[1]** The Fourth Amendment guarantees the right of citizens to be free from unreasonable governmental searches. U.S. CONST. AMEND. IV; *see also Terry v. Ohio*, 392 U.S. 1, 9 (1968). " '[S]ubject only to a few specifically established and well-delineated exceptions,' a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant." *United States v. Caseres*, 533 F.3d 1064, 1070 (9th Cir. 2008) (alteration in original) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Because cars are mobile, the Supreme Court has carved out exceptions to the warrant requirement in the automobile context. However, officers must still possess probable cause to conduct a search. *Id.* (citing *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)).

**[2]** In *United States v. Robinson*, 414 U.S. 218, 235 (1973), the Supreme Court explained that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." So was born the search-incident-to-arrest doctrine, which permits officers to search an arrestee's person subsequent to the arrest of that individual. The rationale is now applied in the automobile context. *Belton* answered the "question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." 453 U.S. at 459. There, the Court considered the impact of *Robinson* and *Chimel v. California*, 395 U.S. 752, 762 (1969)—which held that a permissible search incident to arrest may not extend past an area within the immediate control of the arrestee—on the search of an arrestee's automobile. In doing so, it developed the "workable rule . . . that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may,

as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460 (footnotes omitted).

However, this "workable rule" still confounded many and resulted in much Fourth Amendment litigation. The Court provided additional guidance in *Gant*. Rodney Gant had been arrested in Arizona for driving on a suspended license. *Gant*, 129 S. Ct. at 1714. After his arrest, officers placed him in handcuffs and secured him in the back of a patrol car before conducting a search of his vehicle. *Id.* at 1715. This led to the discovery of cocaine stashed in the pocket of a jacket located on the automobile's backseat. *Id.* The Arizona Supreme Court determined that *Chimel*'s search-incident-to-arrest doctrine did not stretch so far as to permit the search of a vehicle when the occupant could not have accessed the vehicle to retrieve weapons or evidence. *Id.* at 1714; *see also State v. Gant*, 162 P.3d 640, 646 (Ariz. 2007).

**[3]** The United States Supreme Court agreed. Writing for the Court, Justice Stevens acknowledged the confusion surrounding searches of recent automobile occupants incident to their arrest, noting "our opinion [in *Belton*] has been widely understood to allow a vehicle search incident to the arrest of a recent occupant even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S. Ct. at 1718. However, he said,

> [t]o read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would . . . untether the rule from the justifications underlying the *Chimel* exception—a result clearly incompatible with our statement in *Belton* that it "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests."

*Id.* at 1719 (quoting *Chimel*, 453 U.S. at 460, n.3). The Court delineated a bright-line test applicable to these situations.

Officers are only permitted to search the passenger compartment of an arrestee's automobile if the search is required for officer safety or is necessary to prevent destruction of evidence of the crime for which the recent occupant was arrested. *Id.* In *Gant*, "[n]either the possibility of access nor the likelihood of discovering offense-related evidence authorized the search" because "Gant clearly was not within reaching distance of his car at the time of the search[, and an] evidentiary basis for the search was also lacking." *Id.* The Court ruled that the search was an unreasonable warrantless search in violation of Gant's Fourth Amendment rights.

**[4]** Similarly, Trooper Wiley's search here cannot be classified as a valid search incident to arrest in light of the intervening decision in *Gant*. This exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* at 1716 (citations omitted). Though a weapon was found inside Ruckes's vehicle, he was secured in the backseat of the patrol car—clearly beyond lunging distance of the handgun—at the time Trooper Wiley conducted the automobile search. Additionally, there was no likelihood that Trooper Wiley might have discovered evidence of Ruckes's driving offense within the vehicle. As the Supreme Court said in *Gant*, driving on a suspended license is "an offense for which police [cannot] expect to find evidence in the passenger compartment of [the arrestee's] car." *Id.* at 1719. Because neither justification for a search incident to arrest existed in this case, we hold that this search cannot be upheld on that theory in light of *Gant*.

## IV

The district court held that an alternative basis existed to uphold the validity of the search here. Judge Burgess found that because no one was available to remove the vehicle from the freeway, and because Ruckes was being taken into custody on his illegal driving charge, impoundment would fol-

low. He held that the evidence would inevitably have been discovered as police inventoried the vehicle upon impound.

**[5]** "The inevitable discovery doctrine is an exception to the exclusionary rule." *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). The doctrine permits the government to rely on evidence that ultimately would have been discovered absent a constitutional violation. *Nix v. Williams*, 467 U.S. 431, 443 (1984). "The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct." *Id.* at 443 n.4. As the Court explained, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[,] . . . then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received." *Id.* at 444 (footnote omitted).

Here we must ask whether the government has shown that the firearm and illicit substances would have been uncovered by law enforcement officers through some permissible means. Judge Burgess did not err in finding that the government had met its burden on this alternative ground.

**[6]** In Washington, "[a] vehicle may lawfully be impounded if authorized by statute or ordinance. 'In the absence of statute or ordinance, there must be reasonable cause for the impoundment.' " *State v. Bales*, 552 P.2d 688, 689 (Wash. Ct. App. 1976) (quoting *State v. Singleton*, 511 P.2d 1396, 1399 (Wash. Ct. App. 1973)). The Washington State Patrol is expressly authorized "to impound a vehicle when, among other things, the driver is arrested for [driving with license suspended]." *Potter v. Wash. State Patrol*, 196 P.3d 691, 694 (Wash. 2008) (citing Wash. Rev. Code § 46.55.113(1)). It is clear that an officer may "take custody of a vehicle, at his or her discretion" if it is "unattended upon a highway where the vehicle constitutes an obstruction to traffic or jeopardizes public safety." Wash. Rev. Code

§ 46.55.113(2)(b). Additionally, "[p]olice officers may conduct a good faith inventory search following a lawful impoundment without first obtaining a search warrant." *Bales*, 552 P.2d at 689 (citations omitted).

**[7]** This was a permissible inventory search under Washington law. Trooper Wiley explained to Ruckes that the car could be impounded for thirty days because Ruckes had been caught driving on a suspended license. Then, during his testimony at the suppression hearing, Trooper Wiley informed Judge Burgess that because no one was available to remove the car from the side of Interstate Highway 5, it was standard procedure to impound it. An inventory search would have necessarily followed. We therefore hold that, while the search cannot be upheld as incident to arrest in light of *Gant*, the deterrent rationale for the exclusionary rule is not applicable where the evidence would have ultimately been discovered during a police inventory of the contents of Ruckes's car.

**[8]** We emphasize, however, that the inevitable discovery doctrine will not always save a search that has been invalidated under *Gant*. The government is still required to prove, by a preponderance of the evidence, that there was a lawful alternative justification for discovering the evidence. *Nix*, 467 U.S. at 444. "[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* at 444 n.5. Therefore, while the government met its burden here, the district court must conduct a case-by-case inquiry to determine whether a lawful path to discovery—such as inevitability—exists in each case. To hold otherwise would create an impermissible loop-hole in the Court's bright-line *Gant* determination.

**V**

Because the Washington State Patrol is authorized to both impound and inventory a vehicle when its operator is arrested

for driving on a suspended license, Ruckes's loaded pistol and crack cocaine would have inevitably been discovered notwithstanding Trooper Wiley's invalid search incident to arrest. Therefore, the evidence was properly admitted under the inevitable discovery exception to the exclusionary rule.

**AFFIRMED.**