**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

HOLLIE LYNN WEAVER, a/k/a Hollie
Lynn Brawner (Maiden Name),
                *Defendant-Appellant.*

No. 04-50608

D.C. No.
CR-03-00077-RJT

OPINION

Appeal from the United States District Court
for the Central District of California
Robert J. Timlin, District Judge, Presiding

Argued and Submitted
December 9, 2005—Pasadena, California

Filed January 10, 2006

Before: Harry Pregerson, John T. Noonan, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Fred A. Rowley, Jr., Assistant United States Attorney, (argued) and Jaime Guerrero, Assistant United States Attor-

ney (briefed), Los Angeles, California, for the plaintiff/appellee.

Elizabeth A. Newman, Deputy Federal Public Defender, Los Angeles, California, for the defendant/appellant.

---

## OPINION

PREGERSON, Circuit Judge:

Hollie Lynn Weaver appeals the district court's denial of her motion to suppress evidence related to her conviction for embezzlement of mail matter by a postal employee in violation of 18 U.S.C. § 1709. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Because we conclude that the warrantless search of Weaver's vehicle was a contemporaneous incident of the custodial arrest of one of Weaver's two passengers, we affirm.

## I.  Factual and Procedural Background

On May 23, 2001, Sergeant Hignight ("Hignight") of the Riverside County Sheriff's Department was driving an unmarked sheriff's vehicle when he recognized Adam Herron ("Herron") in the passenger seat of a vehicle that had pulled up next to Hignight. The car was driven by an unknown female later identified as Hollie Lynn Weaver ("Weaver"). Herron's son Tyler was in the back seat. Hignight recognized Herron and knew that there were outstanding warrants for Herron's arrest. Hignight also knew that Herron was under investigation concerning a box of stolen checks. Hignight summoned another officer in a marked patrol car and asked him to make a traffic stop of the subject vehicle.

After making the traffic stop, Hignight and the other officer ordered Herron from Weaver's car, arrested him, handcuffed

him, and placed him in the back seat of the marked patrol car. Weaver and Tyler exited the vehicle at Hignight's direction and sat on the curb. Weaver refused to consent to a search of her car. Hignight informed Weaver that he would search the car over her protest, but said that he had to await the arrival of a third officer that he had called to the scene.

Hignight testified that it was his "typical procedure" to conduct a vehicle search with three officers on the scene: one to monitor the suspects, one to conduct the search, and one to observe the officer conducting the search. Ten to fifteen minutes elapsed before the third officer arrived, at which time Hignight searched the car. The parties agree that virtually nothing happened while waiting for the third officer.

On searching the vehicle, Hignight found forty-six blank personal checks in a black organizer on the floor behind the driver's seat. The checks had been reported stolen three days before by a postal customer in Rancho Mirage, California. Weaver, a part-time letter carrier, had been assigned to the postal delivery route in question around the time that the checks were stolen. Subsequent investigation revealed that Herron had been filmed at a bank cashing a forged check. Forensic analysis revealed that Weaver had forged thirty-five checks, including the check cashed by Herron, totaling $2,582.97.

After the district court denied Weaver's motion to suppress evidence, she entered a conditional guilty plea on June 10, 2004 to embezzlement of mail matter by a postal service employee in violation of 18 U.S.C. § 1709. The district court sentenced Weaver to three years of probation and ordered her to pay restitution in the amount of $2,582.97. Weaver reserved her right to appeal the denial of her suppression motion. Weaver's appeal of that motion is before us today.

## II.  Discussion

[1] "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporane-

ous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981). Applying the *Belton* rule, we have held that a warrantless automobile search will be valid if it is "roughly contemporaneous with the arrest." *See United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (quoting *United States v. McLaughlin*, 170 F.3d 889, 892 (9th Cir. 1999)).

**[2]** Although contemporaneity is important, we have made clear that it is not the sole inquiry. "The relevant distinction turns not upon the moment of arrest versus the moment of the search but upon whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former." *McLaughlin*, 170 F.3d at 893 (quoting *United States v. Abdul-Saboor*, 85 F.3d 664, 668 (D.C. Cir. 1996)). Indeed, "[t]here is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search that is a contemporaneous incident of the arrest." *McLaughlin*, 170 F.3d at 892. *See*, *e.g.*, *id.* at 891-92 (holding that search conducted five minutes after arrest was contemporaneous to the arrest and that officer's completion of vehicle impound paperwork during interval was not intervening act); *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1036 (9th Cir. 1997), *overruled on other grounds by Appredi v. New Jersey*, 530 U.S. 466, 489-90 (2000) (holding that where time elapsed between arrest and search was unclear, act of towing vehicle to police station before conducting search was intervening act). *But see United States v. Vasey*, 834 F.2d 782, 787-88 (9th Cir. 1987) (holding that search conducted thirty to forty-five minutes after arrest was not contemporaneous to arrest and that officer's instigation of various conversations with handcuffed arrestee were intervening acts).

It is undisputed in the instant matter that Hignight made a lawful custodial arrest of Weaver's passenger. The inquiry thus turns to whether the ensuing search of Weaver's automobile was roughly contemporaneous with the arrest, and not so

separated in time or by intervening acts that the search was not incident to the arrest. *See McLaughlin*, 170 F.3d at 893.

Hignight testified that he delayed the search of the automobile for ten to fifteen minutes to summon a third officer to the scene to conduct a safe search. During that interval, Hignight testified that he "was standing on the curb just waiting for the additional unit." As Weaver indicated in her opening brief, "[t]ime froze" during the interval. Weaver does not suggest that any particular intervening act occurred between the arrest and the search.

**[3]** We must conclude that Hignight's search of Weaver's automobile was conducted as a contemporaneous incident to the arrest of Weaver's passenger. Unlike *Ramos-Oseguera* where police towed the arrestee's car before searching it, or *Vasey* where police repeatedly questioned the arrestee before conducting the search, no intervening act occurred in this case. Moreover, the ten to fifteen-minute delay here is more like the five minute delay in *McLaughlin* than the thirty to forty-five minute delay in *Vasey*.[1] Faithfully applying our *Belton* jurisprudence, we must hold that the search of Weaver's car was a contemporaneous incident of Herron's arrest.

Weaver also argues that the *Belton* rule is flawed and should be re-examined. We must leave that challenge to the Supreme Court. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (internal citation omitted)). We agree, however, that the *Belton* rule is broader than its stated rationale. Here, where the arrestee was handcuffed and secured in a patrol car before police conducted the search, the

---

[1]We reiterate, however, that time alone is never dispositive of the contemporaneity inquiry under *Belton*. *See McLaughlin*, 170 F.3d at 892.

rational underpinnings of *Belton*—officer safety and preservation of evidence—are not implicated. We are hardly the first to make this observation.[2] We respectfully suggest that the Supreme Court may wish to re-examine this issue.

**[4]** Yet, we are bound by *Belton*. *See Thornton v. United States*, 541 U.S. 615, 618 (2004) (finding *Belton* controlling where arrestee was handcuffed and placed in patrol car before officer searched arrestee's vehicle). Accordingly, the district court's denial of Weaver's motion to suppress evidence is

**AFFIRMED.**

---

[2]*See Thornton v. United States*, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring) (noting that "lower court decisions seem now to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception justified by the twin rationales of *Chimel* . . . [This is] a direct consequence of *Belton*'s shaky foundation."); *Thornton*, 541 U.S. at 625-26 (Scalia, J., concurring) (arguing that the majority's "effort to apply [the *Belton*] doctrine to this search stretches it beyond its breaking point" because the handcuffed arrestee could only pose a threat if he "possessed the skill of Houdini and the strength of Hercules" (citation omitted)); *Belton*, 453 U.S. at 463-64 (Brennan, J., dissenting) (fearing that the *Belton* majority "may signal a wholesale retreat from our carefully developed search-incident-to-arrest analysis" by "formulating an arbitrary 'bright-line' rule . . . that fails to reflect *Chimel*'s underlying policy justifications"); *McLaughlin*, 170 F.3d at 894 (Trott, J., concurring) (noting that "in our search for clarity, we have now abandoned our constitutional moorings and floated to a place where the law approves of purely exploratory searches of vehicles").