**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

RICARDO GONZALEZ,
            *Defendant-Appellant.*

No. 07-30098

D.C. No.
CR-06-02112-EFS
Eastern District of
Washington,
Spokane

ORDER

Filed March 16, 2010

Before: Betty B. Fletcher, Richard A. Paez, and
N. Randy Smith, Circuit Judges.

Order;
Concurrence by Judge B. Fletcher;
Dissent by Judge Bea

---

## ORDER

The panel has voted to deny the Petition for Rehearing. Judges Paez and N.R. Smith have voted to deny the Petition for Rehearing En Banc, and Judge B. Fletcher has so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to hear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. *See* Fed. R. App. P. 35.

The petition for rehearing and the petition for rehearing en banc are DENIED.

B. FLETCHER, PAEZ, and N.R. SMITH, Circuit Judges, concurring in the denial of rehearing en banc:

Judge Bea's dissent presents a distorted view of what this case is all about. It requires a response that can be part of the public record. Otherwise our panel's reasoned response to the en banc call would remain hidden from public view.

At the time of our original disposition, the Supreme Court had not decided *Arizona v. Gant*, 129 S. Ct. 1710 (2009). Our circuit interpreted *New York v. Belton*, 453 U.S. 454 (1981), to allow law enforcement to search the passenger compartment of a vehicle so long as the search was "roughly contemporaneous with the arrest" of the vehicle's occupant. *United States v. Weaver*, 433 F.3d 1104, 1106 (9th Cir. 2006) (citation and quotation marks omitted). Accordingly, our panel in its original disposition concluded that the search of Defendant Gonzalez's vehicle did not violate the Fourth Amendment.

While Gonzalez's petition for certiorari was pending, the Supreme Court decided *Gant*, holding that a number of state and federal courts, including ours, had improperly interpreted *Belton*. Far from announcing a new rule and overruling *Belton*, the Court explained that our precedent had misinterpreted *Belton* by ignoring that *Belton* is the progeny of *Chimel v. California*, 395 U.S. 752 (1969). We had "untether[ed]" *Belton* "from the justifications underlying the *Chimel* exception," which allows searches incident to lawful arrests, but limits those searches solely to "the arrestee's person and the area . . . within which he might gain possession of a weapon or destructible evidence" at the time of the search. *Gant*, 129 S. Ct. at 1716, 1719 (citation and quotation marks omitted).

The Supreme Court granted Gonzalez's certiorari petition, vacated our panel's decision, and remanded to us "for further consideration in light of *Arizona v. Gant*." *Quintana v. United States*, 129 S. Ct. 2156 (2009) (citation omitted). In our decision on remand, we faithfully followed its instructions. We

applied *Gant* consistent with the Supreme Court's precedents on the application of the exclusionary rule and on retroactivity. *See United States v. Gonzalez*, 578 F.3d 1130 (9th Cir. 2009).

Judge Bea's bold pronouncement that we disregarded *Herring v. United States*, 129 S. Ct. 695 (2009), and *Illinois v. Krull*, 480 U.S. 340 (1987), is wrong.

Indeed, we followed the teaching of the *Herring* Court that "the benefits of deterrence must outweigh the costs." 129 S. Ct. at 700. In *Gant*, the Court decided that in cases such as *Gonzalez*, the benefits of deterrence do outweigh the costs. It held that where, as in *Gant*, "it is clear that a [law enforcement] practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement 'entitlement' to its persistence." *Gant*, 129 S. Ct. at 1723. Because the unconstitutionality of the searches in *Gant* and this case was "clear," the searches never should have occurred. They were unlawful *ab initio*. As a consequence, *Gant* held that deterrence of such searches trumps the costs of exclusion. Judge Bea's argument in support of the dissenters in *Gant* is to no avail. Let him disagree with the Supreme Court, if he must, but not with our adherence to the Court's dictates.

*Krull*, for its part, is inapposite. It concerns law enforcement's reliance on a statute and not the interpretation of case law. The controlling authority for this case was *United States v. Johnson*, 457 U.S. 537 (1982), not *Krull* as advocated by Judge Bea. The panel correctly followed *Johnson*.

Finally, the reader should bear in mind that this case deals with a defendant's right to suppress evidence obtained by an unconstitutional search. It does not involve whether the officers who conducted the search are entitled to qualified immunity. The rights of the defendant, not those of the police, are at issue. The dissent persists in its view that discipline of police is at issue rather than individual rights. *See* Dissent at

4347-48 ("Here, the panel confuses the retroactive application of a Supreme Court decision in the area of individual rights (a jury picked without racial motivation) with what is an area of societal rights (suppression of evidence to discipline police).").

I

The precedents that controlled our decision in *Gonzalez* were those dealing with retroactivity. All agree that when *Gant* was decided, defendant Gonzalez's conviction had not yet become final. All agree that under *Gant*, the search in our case was unconstitutional. Looking to the Supreme Court's precedents on retroactivity, we applied *Gant*, holding that the search was unconstitutional and that the evidence seized should be suppressed.

When the Supreme Court clarifies the boundaries of a constitutional search in one case, in fairness, that clarification must be consistently applied to all cases that are not yet final. That policy was applied in *Johnson*, 457 U.S. 537, and *Griffith v. Kentucky*, 479 U.S. 314 (1987).

The question in *Johnson* was whether *Payton v. New York*, 445 U.S. 573 (1980), should be applied retroactively to exclude evidence in cases pending on direct appeal. The government argued that the exclusionary rule should not apply to evidence seized in good-faith reliance on pre-*Payton* law. We quote the Court's rejection of that argument:

> The Government [relies] on [*United States v.*] *Peltier*'s broad language: "If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had *knowledge, or may properly be charged with knowledge*, that the search was unconstitutional under the Fourth Amendment" (emphasis

added). The Government reads this language to require that new Fourth Amendment rules must be denied retroactive effect in all cases except those in which law enforcement officers failed to act in good-faith compliance with then-prevailing constitutional norms.

. . . Under the Government's theory, because the state of Fourth Amendment law regarding warrant-less home arrests was "unsettled" before *Payton*, that ruling should not apply retroactively even to cases pending on direct appeal when *Payton* was decided.

Yet the Government's reading of *Peltier* would reduce its own "retroactivity test" to an absurdity. Under this view, the only Fourth Amendment rulings worthy of retroactive application are those in which the arresting officers violated pre-existing guidelines clearly established by prior cases. But as we have seen above, cases involving simple application of clear, pre-existing Fourth Amendment guidelines raise no real questions of retroactivity at all. Literally read, the Government's theory would automatically eliminate *all* Fourth Amendment rulings from con-sideration for retroactive application.

The Government's [next] claim is that *Peltier*'s logic suggests that retroactive application of Fourth Amendment decisions like *Payton* even to cases pending on direct review—would not serve the poli-cies underlying the exclusionary rule. . . .

. . . .

If, as the Government argues, all rulings resolving unsettled Fourth Amendment questions should be nonretroactive, then, in close cases, law enforcement officials would have little incentive to err on the side

of constitutional behavior. Official awareness of the dubious constitutionality of a practice would be counterbalanced by official certainty that, so long as the Fourth Amendment law in the area remained unsettled, evidence obtained through the questionable practice would be excluded only in the one case definitively resolving the unsettled question. Failure to accord *any* retroactive effect to Fourth Amendment rulings would "encourage police or other courts to disregard the plain purport of our decisions and to adopt a let's-wait-until-it's-decided approach."

457 U.S. at 559-61 (citations omitted). Like *Payton*, *Gant* clarified a point of law that the Court had not yet explicitly addressed: the scope of the Court's holding in *Belton*. *Compare State v. Gant*, 162 P.3d 640, 645 (Ariz. 2007) (majority opinion) ("We do not . . . read *Belton* or *Thornton* as abandoning the *Chimel* justifications for the search incident to arrest exception."), *with id.* at 647 (Bales, J., dissenting) ("The validity of a *Belton* search . . . clearly does not depend on the presence of the *Chimel* rationales in a particular case."). As does Judge Bea, the United States in *Johnson* argued that excluding evidence seized in violation of *Payton* would not appreciably deter police misconduct. That argument was made, and the *Johnson* Court firmly rejected it; our panel was compelled to do so also.

*Griffith*—which was decided *after* the Supreme Court recognized the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984)—reaffirmed *Johnson*'s "holding that 'subject to [certain exceptions], a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered.'" 479 U.S. at 324 (quoting *Johnson*, 457 U.S. at 562). Like *Johnson*, it explicitly considered and rejected " 'reliance by law enforcement authorities on the old standards' " as a reason not to apply a Fourth Amendment

decision retroactively. *Id.* at 324-25 (quoting *Johnson*, 457 U.S. at 549). *Johnson* and *Griffith* compel the result the panel reached.

Judge Bea relies on *United States v. Peltier*, 422 U.S. 531 (1975), which declined to apply *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973), retrospectively. In light of *Johnson*, we think his reliance misplaced. The *Johnson* Court made clear that *Peltier*'s holding applied only to cases that "work[ed] a sharp break in the web of the law." 457 U.S. at 551 (citation and quotation marks omitted). The *Gant* majority stated that its holding worked no such break. *See Gant*, 129 S. Ct. at 1719, 1722 & n.9 (reasoning that holding followed straightforwardly from *Chimel* and that the facts of *Belton* and *Thornton v. United States*, 541 U.S. 615 (2004), were "easily distinguished"). In arguing otherwise, Judge Bea sides with the *Gant* dissenters. *See id.* at 1726 (Alito, J., dissenting) (contending that majority's holding created a "new rule").

Judge Bea also relies on *Krull* to argue against the exclusion of evidence in this case. *Krull* dealt with law enforcement reliance on a statute, which like most statutes, carries the presumption of constitutionality. 480 U.S. at 342. Here, by contrast, law enforcement relied on a misapplication of *Belton* that *Gant* deemed "clear[ly]" unconstitutional; *Belton*, when properly interpreted, would counsel all along that the searches in *Gant* and *Gonzalez* were unconstitutional. *Gant*, 129 S. Ct. at 1723.

More fundamentally, the fact remains that when the Supreme Court in *Johnson* was faced with precisely the question that confronted our panel, it held that the exclusionary rule applied to cases pending on direct appeal. *Johnson* directly controls. Until such time as the Court were to overrule *Johnson*, it is *Johnson* and not *Krull* that we must follow.

## II

The panel's decision is directly supported by *Gant* itself. In *Gant*, the Supreme Court interpreted *Belton*, 453 U.S. 454, to allow a vehicle search incident to an arrest of the vehicle's occupant only where the "arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 129 S. Ct. at 1723. This holding prompted a vigorous dissent:

> The *Belton* rule has been taught to police officers for more than a quarter century. Many searches—almost certainly including more than a few that figure in cases now on appeal—were conducted in scrupulous reliance on that precedent. It is likely that, on the very day when this opinion is announced, numerous vehicle searches will be conducted in good faith by police officers who were taught the *Belton* rule.

*Id.* at 1728 (Alito, J., dissenting).

The majority, however, did

> not agree with the contention in Justice Alito's dissent . . . that consideration of police reliance interests requires a different result. Although it appears that the State's reading of *Belton* has been widely taught in police academies and that law enforcement officers have relied on the rule in conducting vehicle searches during the past 28 years, many of these searches were not justified by the reasons underlying the [search-incident-to-arrest] exception. . . . The fact that the law enforcement community may view the State's version of the *Belton* rule as an entitlement does not establish the sort of reliance interest that could outweigh the countervailing interest that all individuals share in having their constitutional

rights protected. If it is clear that a practice is unlawful, individuals' interest in its discontinuance clearly outweighs any law enforcement "entitlement" to its persistence.

*Id.* at 1722-23 (footnote omitted). The *Gant* majority ruled as it did precisely because the "interest that all individuals share in having their constitutional rights protected" outweighs good-faith "police reliance interests." In short, the Supreme Court has already decided that in a case such as ours, "the benefits" of the exclusionary rule "outweigh the costs." *Herring*, 129 S. Ct. at 700.

It is no answer to say, as does Judge Bea, that the majority and the dissent were arguing about *stare decisis* and not deterrence of "clear[ly] . . . unlawful" searches. *Gant*, 129 S. Ct. at 1723. The majority expressly stated that it was not overruling *Belton*, *see id.* at 1722 n.9, and thus it also implicitly recognized that the doctrine of *stare decisis* had little, if any, force in *Gant*. *See id.* at 1722 ("[W]e would be particularly loath to uphold an unconstitutional result in a case that is so easily distinguished from the decisions that arguably compel it. . . . It is thus unsurprising that Members of this Court who concurred in the judgments in *Belton* and *Thornton* also concur in the decision in this case."). The flash point of disagreement between the majority and dissent in *Gant* was not so much *stare decisis* as "police reliance interests." *See id.* at 1722-23. Justice Alito's concern about "the suppression of evidence gathered in many searches carried out *in good-faith reliance* on well-settled case law," *id.* at 1726 (Alito, J., dissenting) (emphasis added), demonstrates that *Gant* was about suppression of evidence and not just the constitutionality of the search.

That the majority and dissenting opinions should have clashed over the exclusionary rule is not surprising, for in *Gant*, the Arizona Supreme Court had not simply declared the search unconstitutional, but had also ordered the exclusion of

the evidence. *State v. Gant*, 162 P.3d at 646. By affirming the Arizona Supreme Court, the Court necessarily affirmed the exclusion of the evidence.

### III

The panel's decision is compelled by the Supreme Court's retroactivity precedents and dictated by *Gant*. The court was right to deny en banc rehearing.

---

Judge BEA, with whom O'SCANNLAIN, KLEINFELD, GOULD, TALLMAN, BYBEE, and CALLAHAN, Circuit Judges, join, dissenting from denial of rehearing en banc:

I dissent from our denial of the petition for rehearing en banc, first, because the panel's decision disregards the Supreme Court's decisions in *Herring v. United States*, ___ U.S. ___, 129 S. Ct. 695, 700 (2009), and *Illinois v. Krull*, 480 U.S. 340 (1987), regarding when police misconduct justifies suppression of relevant evidence in a criminal trial, and second, because the panel's decision creates a split among the circuits. *See United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3221 (U.S. Mar. 1, 2010) (No. 09-402); *United States v. Jackson*, 825 F.2d 853 (5th Cir. 1987) (en banc).

## I.  Introduction

The panel has decided that evidence seized by a police officer acting in good faith reliance on the predominant interpretation of Supreme Court precedent should be suppressed, despite the fact that suppression in this case cannot conceivably result in appreciable deterrence of future police misconduct. How does it deter police *misconduct* in the future to tell the police: "the evidence you seized legally, under the law, cannot be used because the law has changed, and now, what

wasn't misconduct at the time you acted has become miscon-
duct"? The attentive policeman hearing this might well look
blankly and ask: "Who knew? Am I supposed to guess? What
am I supposed to do next time? *Not* follow the law as written
by the Ninth Circuit, but hold back a little? How much?"

The panel's decision is in direct conflict with the Supreme
Court's recent holding in *Herring v. United States*: "[T]he
exclusionary rule is not an individual right and applies only
where it results in appreciable deterrence [of police miscon-
duct]." 129 S. Ct. at 700 (quotation marks and alterations
omitted). Because the sole justification—up until now—for
exclusion of relevant evidence improperly seized has been to
deter future police misconduct,[1] the Supreme Court has held
suppression is not an available remedy when police officers
conducted a search in good faith reliance on some higher
authority, such as a warrant or a statute, even if the warrant
or statute were later held invalid or unconstitutional (the
"good faith exception"). *See Krull*, 480 U.S. 340 (statutes),
*United States v. Leon*, 468 U.S. 897 (1984) (warrants). Here,
the police officer relied on a different kind of authority,
namely the settled case law under *New York v. Belton*, 453
U.S. 454, 460 (1981); *see also United States v. Weaver*, 433
F.3d 1104, 1106 (9th Cir. 2006) (our circuit's adoption of
*Belton*).

Officer Garcia lawfully stopped a vehicle with four occu-
pants. Defendant Gonzalez was riding as a passenger in the
vehicle. After the vehicle was apparently secure against any
risk to the officer, and the vehicle's occupants had moved
away from the vehicle, Officer Garcia searched the vehicle
and discovered Gonzalez's 9mm pistol in the glove compart-

---

[1]Justice Ginsburg, in her dissent in *Herring*, offered alternative justifi-
cations for applying the exclusionary rule, but those justifications have not
been adopted by the Supreme Court. *See* 129 S. Ct. at 707-08 (Ginsburg,
J., dissenting). Since the panel did not rest its decision on any of Justice
Ginsburg's thoughts, they need not here be discussed.

ment. It is undisputed that, at the time of the search, Officer Garcia was acting in the good faith belief that the law—the predominant interpretation of *Belton*—allowed him to make that search.

Defendant Gonzalez moved at trial to suppress evidence of the 9mm pistol that Officer Garcia seized during his search of the vehicle. The district court denied the motion to suppress; we affirmed.

The Supreme Court then announced its decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), which held such searches unconstitutional. The Court vacated our opinion in the instant case and remanded it back to us with the instruction to consider the case in light of its ruling in *Gant*. Note that the Court did not reach the same result in this case as it had in *Gant*, where it upheld suppression of the evidence. It vacated and remanded; it did not order the lower courts to suppress the evidence of Gonzalez's possession of the 9mm pistol.

On remand following the Supreme Court's decision in *Gant*, the panel correctly held that the search was unconstitutional but, I believe, incorrectly held that the good faith exception did not apply, and therefore ordered the evidence suppressed.

To reach its result in favor of suppression, the panel holds that a police officer's reliance on settled case law is somehow different from a police officer's reliance on a reasonable warrant (*Leon*) or statute (*Krull*). But, the panel does not explain either in its opinion or its concurrence from the order denying rehearing en banc, and I can fathom no possible reason, why it found a difference between a rule applicable to a magistrate's warrant, later found inadequate (*Leon*), or a statute later found to be unconstitutional (*Krull*), and circuit court case law, later found to no longer allow the search in question (*Gant*). It is not misconduct for the police to rely on a reasonable warrant even if the warrant was later held invalid. *Leon*,

468 U.S. at 922. Nor was it misconduct for the police to rely on a reasonable statute, even if the statute is later held unconstitutional. *Krull*, 480 U.S. at 361. We should encourage our officers to act within the bounds of the law as defined by magistrates and legislatures. *United States v. Peltier*, 422 U.S. 531, 542 (1975). Why then should we make police actions futile when those actions are fully in accord with the settled decisions of our courts when the actions are taken? I submit we should not.

The Supreme Court, moreover, has already said so: "[U]nless we are to hold that parties may not reasonably rely upon any legal pronouncement emanating from sources other than this Court, we cannot regard as blameworthy those parties who conform their conduct to the prevailing statutory or constitutional norm." *Peltier*, 422 U.S. at 542. There is no dispute that, before the Supreme Court decided *Gant*, the prevailing—even predominant—constitutional norm under *Belton*—as applied in this Circuit by *Weaver*—was to permit searches of vehicles, including glove compartments, even if the defendant or suspect was not within arm's reach of the vehicle and the contents of the vehicle could not reasonably present a risk to the arresting officer. There was nothing blameworthy, and certainly nothing flagrant, about what Officer Garcia did. *See Herring*, 129 S. Ct. at 702 (holding that the exclusionary rule arose from "flagrant and deliberate" violations of rights). I am at a loss to grasp how suppression of the evidence Officer Garcia discovered while properly doing his job, within the boundaries set by the law as it then existed, will deter other police officers from violating other individuals' Fourth Amendment rights.

Suppose that at the next opportunity to consider the matter, the Court were to determine that automobile stops on objectively reasonable bases—e.g., expired license plate registration tags, burnt out rear lights, etc.—but *actually* motivated by police officers' desire to investigate the cars' occupants and interiors, were no longer constitutionally valid, thereby over-

ruling *Whren v. United States*, 517 U.S. 806 (1996). Routine traffic stops and other searches permitted under *Whren* have become a staple in law enforcement's arsenal of crime-fighting tools. Would all the many pending cases founded on evidence retrieved in such searches be subject to reversal? That is precisely the principle which is being adopted by the panel's decision.

The predictable effect of the panel's decision will be to undermine police officers' ability to catch and prosecute criminals. First, the panel's decision will deprive prosecutors of inculpatory evidence supporting numerous prosecutions and convictions of criminals whose cases were pending at the time *Gant* was decided. As the Government contended in its petition for rehearing en banc: "[I]t is important to recognize that *Belton* searches were a fixture in law enforcement prior to *Gant*. The panel's decision thus has the potential to disrupt numerous convictions and ongoing prosecutions that rely on evidence obtained in *Belton* searches conducted consistent with the decisions of this Court." Second, the panel's opinion will generate ongoing uncertainty among police officers about their ability to follow the decisions of this court, or even the Supreme Court, without finding that their work has been for nought. This uncertainty will most likely cause police officers to act overly cautious in pursuing criminals, thus endangering public safety. But it may also have the perverse effect of so frustrating police officers that they may simply ignore our case law, in the hope it may have changed by time of trial and appeal. This result would not only endanger public safety by increasing the amount of evidence the courts will suppress, but would also endanger the public's Fourth Amendment rights.

If there is a silver lining to the panel's decision to flout Supreme Court case law in *Herring* and *Krull*, it is that the panel has set the stage for the Supreme Court to review the scope of the exclusionary rule in light of the circuit split we have now created. The panel's opinion reaches a conclusion

directly contrary to that of *McCane*, 573 F.3d 1037, which held the good faith exception applies to searches held unconstitutional in *Gant*. The opinion is also in direct conflict with *Jackson*, 825 F.2d 853, which held the good faith exception applied to warrantless searches conducted near the border when, at the time the searches took place, they were valid under Fifth Circuit cases that were later overruled by that Circuit.

For these reasons, I respectfully dissent from the denial of rehearing en banc.

## II.   Factual and Procedural Background

Officer Garcia lawfully stopped a vehicle with four occupants. One of the passengers, Silviano Rivera, had several outstanding warrants for his arrest. Garcia placed Rivera in custody and the other passengers exited the vehicle. Officer Garcia searched the vehicle and discovered a loaded 9mm pistol in the unlocked glove compartment. The two female occupants of the vehicle told Garcia the firearm belonged to the fourth occupant, defendant Ricardo Gonzalez. Gonzalez was arrested and charged with being a felon in possession of a firearm. At trial, Gonzalez moved to suppress the evidence discovered during the officer's search. The district court denied the motion. A jury found Gonzalez guilty of the firearm possession charge, and he was sentenced to 70 months' imprisonment.

Gonzalez appealed his conviction and sentence, contending in part that the district court erred in denying his motion to suppress. The panel affirmed, holding the search was lawful under *Belton*, 453 U.S. at 460, and *Weaver*, 433 F.3d at 1106.

The Supreme Court then decided *Arizona v. Gant*, 129 S. Ct. 1710 (2009), which expressly narrowed the predominant interpretation of *Belton* by circuit courts, holding a search of a vehicle incident to arrest may include the passenger com-

partment only if the "arrestee is unsecured or within reaching distance of the passenger compartment at the time of the search," *id.* at 1719, or "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle," *id.* at 1714. The Supreme Court vacated the panel's decision in light of *Gant*. *Quintana v. United States*, 129 S. Ct. 2156 (2009). The Court did not reverse with instructions to enter a judgment of acquittal for Gonzalez nor did it order the lower courts to effect a suppression of the evidence.

On remand, the government conceded the search was unconstitutional under *Gant*. *United States v. Gonzalez*, 578 F.3d 1130, 1132 (9th Cir. 2009). The government contended, however, that this Circuit should affirm the district court's order denying Gonzalez's motion to suppress because the officer conducting the search did so in good faith reliance on then-prevailing Supreme Court and Ninth Circuit precedent. There is no dispute that the officer was acting in good faith at the time of the search.

### III.    The Fourth Amendment, the Exclusionary Rule, and the Good Faith Exception.

Although it is undisputed here that the search turned out to be unconstitutional under *Gant*, finding the search unconstitutional does not automatically invoke the exclusionary rule as to the evidence unearthed by the search. As in *Herring*, the finding of unconstitutionality is only the first step in a two step analysis.

The second step is to decide whether such evidence *should* be suppressed. *Leon*, 468 U.S. at 906 ("Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." (quotation marks omitted)); *see also Herring*, 129 S. Ct. at 700 ("We have repeatedly rejected the argument that exclu-

sion is a necessary consequence of a Fourth Amendment violation.").

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *Krull*, 480 U.S. at 347. But, the remedy of exclusion "has been restricted to those situations in which its remedial purpose is effectively advanced." *Id.* In *Herring*, the Supreme Court made clear that for courts to suppress evidence "the benefits of deterrence must outweigh the costs." 129 S. Ct. at 700.

Suppressing evidence of Gonzalez's firearm here would not result in any appreciable deterrence of police misconduct. As the Supreme Court explained in *Peltier*, there is nothing wrong with police officers acting under the authority of settled case law, including case law from courts other than the Supreme Court. 422 U.S. at 542. If that law turns out to be wrong, then it was the court that was at fault, not the police officers. *See id.* Therefore, there is no benefit to suppressing the evidence in this case. The cost of suppression, moreover, is obvious; Gonzalez—a criminal convicted of being a felon in possession of a firearm—goes free. On balance, there is zero benefit and an obvious cost to suppressing the evidence. The evidence should not be suppressed.

Although this cost-benefit calculation is an inherent component of the exclusionary rule, the Supreme Court has explained that when police officers act in good faith when conducting a search, their objectively reasonable belief is sufficient to show the balance tilts away from suppression. *See Herring*, 129 S. Ct. at 701 ("We (perhaps confusingly) called this objectively reasonable reliance 'good faith.' "). Cases articulating this "good faith exception" fall into two categories. The first category includes cases where there was some error in the issuance of a warrant used to execute the search. *See Herring*, 129 S. Ct. at 695 (holding that evidence should

not be suppressed where a county warrant clerk mistakenly told officers there was an outstanding warrant on file for defendant, but later discovered her error: the warrant had been recalled before its use by the officers); *Arizona v. Evans*, 514 U.S. 1, 15 (1995) (holding that evidence should not be suppressed where officers relied on a computer database which showed the defendant had an outstanding arrest warrant, but later learned a court clerk failed to update the database to show the defendant's warrant had been quashed); *United States v. Leon*, 468 U.S. 897, 919-20 (1984) (holding that evidence should not be suppressed where officers arrested and searched defendant pursuant to a facially lawful warrant, but a district judge later held the warrant lacked probable cause). These cases are instructive because the Supreme Court has repeatedly emphasized that the sole purpose of the exclusionary rule is to deter future unlawful police searches.

It is, however, the second category of cases that is more relevant here; this category includes cases where law enforcement officers conduct a search under a statute that was later determined unconstitutional. *See Krull*, 480 U.S. 340; *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).

In *Krull*, the State of Illinois appealed the trial court's order suppressing evidence discovered during an administrative (i.e., warrantless) search pursuant to Illinois's statutory regime which regulated the sale of automobiles and automobile parts. A police officer conducted an administrative search of the records of an automobile wrecking yard and discovered three stolen vehicles on the property. The following day, a federal district court held the Illinois statute authorizing such administrative searches was unconstitutional. The state trial court agreed and ordered the evidence suppressed. The Illinois Supreme Court affirmed, and the State appealed to the U.S. Supreme Court.

The Supreme Court reversed, holding the good faith exception applied to searches conducted pursuant to a statute that

was not "obvious[ly]" unconstitutional. 480 U.S. at 359. The Court held: "evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 359-60 (quotations omitted). "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." *Id.* at 349.

As the Court could discern no deterrent effect that suppression would have on officers, it turned to the question whether suppression would deter legislators from enacting statutes that ignored or subverted the Fourth Amendment. *See id.* at 351. The Court held there was no evidence that suppression would "act as a significant, additional deterrent." *Id.* at 352. Hence, the "substantial social cost" of excluding inculpatory evidence against defendants—letting the guilty go free—outweighed any incremental deterrent effect, which convinced the Court that applying the exclusionary rule was unjustified. *Id.* at 352-53; *see also DeFillippo*, 443 U.S. at 38 ("Police are charged to enforce laws until and unless they are declared unconstitutional . . . . Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.").[2]

In *McCane*, 573 F.3d 1037 (10th Cir. 2009), the Tenth Circuit addressed the precise situation presented in *Gonzalez*; and it held the good faith exception did apply. 573 F.3d at 1045. A police officer stopped McCane on suspicion of driving on a suspended license. The officer arrested McCane, handcuffed

---

[2]Although decided before *Leon* and not using the good faith exception language, *DeFillippo* denied suppression of evidence where the search was executed under a local ordinance that was later found to be unconstitutional. 443 U.S. at 40.

him, and placed him in the back of the patrol car. The officer then searched McCane's vehicle and discovered a firearm in the pocket of the driver's side door. McCane moved to suppress the evidence of the firearm. The district court held the search was valid. While McCane's appeal was pending, the Supreme Court decided *Gant*. The Tenth Circuit held the search was unconstitutional, but affirmed based on the good faith exception to the exclusionary rule.

First, the Tenth Circuit held that its precedent was well-settled that vehicle searches incident to arrest were lawful under *Belton*, even if the arrestee was secured and offered no danger to the arresting officer at the time of the search. The court then held the good faith exception applied because suppressing evidence discovered during a search that was *constitutional* under settled law, as it existed at the time of the search, would not deter law enforcement officers from conducting *unconstitutional* searches. The exclusionary rule is meant to "deter objectively unreasonable police conduct" and "to deter misconduct by law enforcement officers, not other entities." *McCane*, 573 F.3d at 1044. Because "no deterrent effect would result from suppressing the evidence seized from McCane's vehicle, the Tenth Circuit declined "to apply the exclusionary rule when law enforcement officers act in objectively reasonable reliance upon the settled case law of a United States Court of Appeals." *Id.* at 1045.

In *Jackson*, the defendants were all searched at a highway checkpoint that prior Fifth Circuit cases had deemed a functional equivalent of the border, thus excepting police searches from the warrant requirement. *Id.* at 854-55. In an en banc decision, the Fifth Circuit disapproved its earlier cases and held the checkpoint was, indeed, not a border equivalent. Warrantless and no-probable-cause searches could not there be performed. *Id.* at 854. Nevertheless, the court affirmed the defendants' convictions, based on the evidence seized during warrantless searches, because the "searches were conducted in good faith reliance upon [the Fifth Circuit's] earlier deci-

sions." *Id.* The court held "[t]he reasoning of *Leon* fully applies to the case at hand." *Id.* at 866. The court noted that it had upheld searches at the checkpoint numerous times— i.e., the law was well-settled—and that there was no suggestion the Fifth Circuit was "inclined to ignore or subvert the Fourth Amendment." *Id.* (quoting *Leon*, 468 U.S. at 916).[3]

Despite these cases, the panel held the good faith exception did not apply because *Krull* was limited to searches conducted under statutory authority and did not extend to searches conducted under well-settled case law precedent. Of course, *Krull* dealt only with a statute-based search. The Court said nothing about a search based on settled case law, nor that its holding could not be extended to the latter. The panel provides a curious reason for its disregard of *Krull*; it chooses to follow a pre-*Leon* case before the "good faith exception" was developed, *Johnson*, rather than a post-*Leon* "good faith exception" case. But the panel gives no reason why we should treat our decisions as lesser law under the good faith exception than statutes or administrative regulations.

To clear away any confusion, the existence of a relevant court case supporting an officer's search does not automatically prove he was acting in good faith where that case is later overruled. A police officer must still prove that his reliance was objectively reasonable. That problem, however, is no different from the problem law enforcement officers face when deciding if a statute is obviously unconstitutional. *See Krull*, 480 U.S. at 355 ("Nor can a law enforcement officer be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional."). And the same problem recurs when law enforcement officers decide whether a "warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid." *Id.* (quotation marks

---

[3] I do not think this circuit is any more inclined to subvert the Fourth Amendment than is the Fifth Circuit.

omitted). In this case, an objectively reasonable officer would have no basis for suspecting the Ninth Circuit's well-settled interpretation of *Belton* was obviously unconstitutional. *See Weaver*, 433 F.3d at 1106.

## IV.  Retroactivity Cases Do Not Apply Because Here the Rule to Be Applied Retroactively (*Gant*) Does Not Eliminate the Good Faith Exception (*Leon, Krull*)

Because the panel held that *Krull*, and the other cases applying the good faith exception, did not control, the panel instead relied on *United States v. Johnson*, 457 U.S. 537, 562 (1982), which held that "a decision of the Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *See also Griffith v. Kentucky*, 479 U.S. 314 (1987).[4] To do otherwise would "violate the principle of treating similarly situated defendants the same." *Gonzalez*, 578 F.3d at 1132 (quoting *Johnson*, 457 U.S. at 555). Guided by that principle, the panel held the firearm must be suppressed in *Gonzalez* because the cocaine was suppressed in *Gant*. In reaching this conclusion, however, the panel ignores that Gant and Gonzalez were *not* similarly situated in a crucial determinant: The government did not raise the good faith exception in Gant's case, but it did in this case.

Therefore, it is simple to reconcile *Johnson* with *Krull*. *Johnson* holds that defendants, whose cases are pending at the time of a law-changing decision, should be entitled to invoke

---

[4]In *Griffith*, the Court held that *Batson v. Kentucky*, 476 U.S. 79 (1986) (holding a criminal defendant could establish a prima facie case of racial discrimination based on the prosecution's use of peremptory challenges to strike members of the defendant's race), applied retroactively to cases pending when *Batson* was decided. The Court reemphasized that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Id.* at 323. *Griffith* held that even cases that were a "clear break" from prior law were retroactive to pending cases. *Id.* at 326-27.

the new rule. *Id.* at 545. Gonzalez *has* invoked the new rule announced in *Gant* and that rule *does* apply to his case; the search of Gonzalez's car, like the search of Gant's car, was unconstitutional. But, once Gonzalez has invoked the rule in *Gant*, the Government is still entitled to invoke the good faith exception, and it has done so here. Nothing in *Gant* eliminates or narrows the good faith exception to the exclusionary rule for the simple reason that the issue whether the good faith exception applied was not raised nor reached in *Gant*.

Nothing in *Gant* suggests suppression is the necessary result of invoking the new rule. There is no suggestion the Arizona state prosecutors ever raised the good faith exception before the U.S. or the Arizona Supreme Court. *See Gant*, 129 S. Ct. at 1723-24. The Arizona Supreme Court held: "The State has advanced no alternative theories justifying the warrantless search of Gant's car, and we note that no other exception to the warrant requirement appears to apply." *State v. Gant*, 162 P.3d 640, 646 (Ariz. 2007). The Arizona Supreme Court then discussed the automobile exception, the plain view exception, and the inventory search exception. *Id.* There is no mention of the good faith exception in the Arizona Supreme Court opinion. Nor is there any mention of the good faith exception in the majority opinion in *Gant*.[5]

Unfortunately, the panel's concurrence to the order denying rehearing en banc takes the Supreme Court's analysis of "police reliance interests" in *Gant* completely out of context. First, reading *Gant*, it is not obvious that "police reliance interests" have anything to do with police officers' good faith reliance on settled law. The Supreme Court did not define "police reliance interests," but, in context, those interests

---

[5]Justice Alito, in his dissent, makes a passing reference to evidence seized in good faith reliance on well-settled case law; he cautions *Gant* will result in the suppression of such evidence, 129 S. Ct. at 1726, but he does not explain why. Nor did the majority in *Gant* acknowledge that argument.

appear to have more to do with the cost of retraining officers than anything related to the good faith exception. *See Gant*, 129 S. Ct. at 1722-23. Second, *Gant* decided only that such interests were insufficient to justify perpetuating the rule that permitted unconstitutional searches in the future. *Gant* did not balance the deterrent effect against the potential for overturned criminal convictions if evidence from *prior* searches is suppressed. *Id.*

Moreover, *Johnson* is consistent with applying the good faith exception in this case. The Court in *Johnson* argued that suppressing evidence seized in a search conducted under "unsettled" law might have a deterrent effect on police, even though suppressing evidence seized in a search conducted under "settled" law would not. 457 U.S. at 560-61. *Johnson*, far from supporting the panel's opinion, actually provides an example where the Supreme Court held that the police officer's reliance on case law was not objectively reasonable. *Johnson* is consistent with the application of the good faith exception announced two years later in *Leon*. In *Johnson*, the issue was searches incident to warrantless home arrests. The Court held that area of law was "unsettled" and that "[l]ong before *Payton* [*v. New York*, 445 U.S. 573 (1980)], for example, this Court had questioned the constitutionality of warrantless home arrests. Furthermore, the Court's opinions consistently had emphasized that, in light of the constitutional protection traditionally accorded to the privacy of the home, police officers should resolve any doubts regarding the validity of a home arrest in favor of obtaining a warrant." *Id.* at 560-61.

Therefore, the panel's concurrence to the order denying rehearing en banc errs in likening *Gant* to *Payton*; the panel's concurrence overlooks that law may be *settled* by courts other than the Supreme Court. *Peltier*, 422 U.S. at 542. Here, there is no question that the law governing the constitutionality of *Belton* searches was settled, at the very least within our circuit. *See Weaver*, 433 F.3d at 1106. As the panel's own opin-

ion states, the scenario in this case is "a search conducted under a *then-prevailing* interpretation of a Supreme Court ruling." *Gonzalez*, 578 F.3d at 1132 (emphasis added); *see also Gant*, 129 S. Ct. at 1718 (finding the broad interpretation of *Belton* "has predominated").

It is clear the *Johnson* Court adopted the reasoning of *Peltier*, approving of the underlying rationale behind the good faith exception, when it held: "*Peltier* suggested only that retroactive application of a Fourth Amendment ruling that worked a 'sharp break' in the law, like *Almeida-Sanchez*, would have little deterrent effect, because law enforcement officers would rarely be deterred from engaging in a practice they never expected to be invalidated." *Id.* at 560.

It is in the retroactivity context that *Griffith* has apparently confused the panel. *Griffith* held that the Supreme Court's decisions were retroactive as to pending appeals regardless whether the decision worked a "sharp break" in the law. 479 U.S. at 327. But *Griffith* was about *Batson* challenges and therefore about defendants' Fourteenth Amendment rights—a right held by the individual defendant. *Id.* at 316. A prosecutor's violation of a defendant's Fourteenth Amendment rights does not raise the issue of deterrence that is inherent to the judicially created exclusionary rule. Nor does it raise the balancing test issues central to the Court's decision in *Herring*, 129 S. Ct. at 700. A defendant has a right to a jury chosen without racial motivation regardless whether a reversal of a conviction will teach prosecutors a lesson and deter similar racially motivated conduct in the future. Here, the panel confuses the retroactive application of a Supreme Court decision in the area of individual rights (a jury picked without racial motivation) with what is an area of societal rights (suppression of evidence to discipline police). *Gant* should have been retroactively applied to Gonzalez's case. And it was. Officer Garcia's search was held unconstitutional. But the remedy of suppression of the evidence so seized is not compelled by

*Gant*. That remedy is governed by *Leon*, *Krull*, and *Herring*. Those cases point firmly toward denying suppression.

If there is any support for the panel's opinion it can be found only in Justice O'Connor's dissent in *Krull*. She wrote: "I find the Court's ruling in this case at right angles, if not directly at odds, with the Court's recent decision in *Griffith*." 480 U.S. at 368. With all respect to Justice O'Connor, her position did not carry the majority vote. Her dissent does, however, cleanly frame the issue the panel decides today: Does the good faith exception to the exclusionary rule apply despite the Supreme Court's retroactivity precedents? The majority of the Supreme Court held that it does in *Leon*, *Krull*, and *Herring*. The panel attempts to elide the issue by asserting case law and statutes are distinct, but that is not only a distinction without a difference in our system of branches of government with equal rank between the legislatures and judiciary, but is an assertion rejected in *Peltier*, a case by which we are bound. What the panel actually does is follow Justice O'Connor's dissent rather than following Supreme Court law.

## V.  Conclusion

Under our Fourth Amendment jurisprudence, courts keep vigil over police officers' power to search and seize. The panel treads over the line between vigilance and punishment. Not only does the panel negate the dutiful—at the time done —investigatory work of Officer Garcia and all similarly situated officers, but it hamstrings all police officers, who must now worry that every search they conduct under permissible circumstances—remember *Whren*—may later be rendered worthless by a change in the law as found by a later court, no matter how foreseeable or not. We should not put the police in the business of foreseeing how courts will change their views of the Fourth Amendment. We should expect them to follow the law, and when doing so, to be able to use the evidence so procured.